## LOUIS WERNER SAW MILL CO. v. HELVERING, Com'r of Internal Revenue.

### No. 6920.

United States Court of Appeals for the District of Columbia.

Argued Dec. 10, 1937.

Decided March 7, 1938.

Rehearing Denied April 7, 1938.

Daniel C. Eberly, of Washington, D. C., and Chase Morsey, of St. Louis, Mo., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Morrison Shafroth, Ralph E. Smith, Norman D. Keller, and Joseph M. Jones, all of Washington, D. C., for respondent.

Before GRONER, Chief Justice, and STEPHENS, and MILLER, Justices.

## GRONER, C. J.

This is a petition to review a decision of the Board of Tax Appeals determining deficiencies in tax for the years 1922 to 1925, inclusive. There are two questions involved.

The first concerns the sale of a tract of timber. Petitioner is a Missouri corporation engaged in the lumber business. On June 1, 1918, it sold for $1,215,000 timber land which it had acquired prior to March 1, 1913. The purchase price was payable $175,000 in cash and the balance in installments of $55,000 every six months from December 1, 1919, until the whole was paid.

Petitioner kept its books and filed its income tax returns on the accrual basis. It did not report any profit on the timber sale because it was of opinion the March 1, 1913, value was greater than the selling price. The Commissioner determined that the March 1, 1913, value was $1,042,309.50 and that petitioner realized a profit on the sale of $172,690.50. The Commissioner, as a result treated the transaction as an installment sale, and on December 26, 1924, proposed and on March 28, 1925, assessed a deficiency for the taxable year 1918. The deficiency for 1919 was asserted February 19, 1926; for 1920, June 19, 1926; for 1921, June 19, 1926. The assessment for 1918 was paid by petitioner April 20, 1925, and the assessments for 1919, 1920, and 1921 were paid in 1926. All assessments were on the basis of a profit of $15,634.54 for each $110,000 annually received by petitioner. (At the hearing before the Board it was stipulated that the correct basis was $14,520.93.)

Although petitioner paid the tax as assessed for the years 1918 through 1921, it has not paid any tax on the purchase price installments received in the years here in question (1922–1925) and now resists payment on the ground that the only power or authority which the Commissioner ever possessed was to assess the tax on the full amount of the profit, namely $172,690.50 (or $160,391 as corrected), for the taxable year 1918. In other words, that the treatment of the transaction as an installment contract was unauthorized and illegal and that the whole profit from the sale, though spread over a period of nine years, accrued at the time the sale was made. The question, therefore is: Was the Commissioner warranted in treating the transaction on the installment basis and in taxing the pro rata profits in the respective years when payments were actually received? and, if he was not, whether the taxpayer, having acquiesced in the treatment of the sale as an installment sale and paid the tax on the installments received in the years 1918 to 1921, inclusive, may, now that the statute of limi-

tation has run, take the position that the entire tax was payable only in 1918?

The Board in sustaining the Commissioner said:

"Petitioner's acquiescence in respondent's determination for the years 1918 to 1921, if it did not create an estoppel strictly, at least amounted to an election to adopt the method used, or a ratification of it. In our opinion the attitude taken has foreclosed the petitioner from claiming at this late day, the right to choose a different method of taxation, especially one which is now ineffective and which would render the income immune from its just tax. * * *"

Prior to 1926 and at least from 1918, the Commissioner by regulation, adopted and promulgated after the passage of each income tax statute, permitted the seller of real or personal property on the installment plan to distribute the profit through the years during which the purchase money was actually received.[1] In Appeal of B. B. Todd, Inc., 1 B.T.A. 762, decided March 16, 1925, the Board of Tax Appeals pointed out that Congress had by statute recognized but two accounting bases, cash and accrual, and that "the Board finds no reason for the injection of a system of computing income foreign alike to the cash receipts and disbursements and to the accrual basis." Other such decisions followed, and Congress thereupon incorporated into the Revenue Act of 1926 a section, 212(d), 44 Stat. 23, specifically authorizing the Commissioner to make assessments according to the general installment principle theretofore followed; and Congress made the provision retroactive. The new plan was optional; taxpayers were allowed to elect whether to make returns upon the cash and accrual basis or upon the installment basis under regulations adopted by the Commissioner which, as adopted, were in all respects substantially identical with those in existence from 1918 on. Cf. Reg. 69, 1926 Revenue Act, articles 42–46. And see in this connection Burnet, Commissioner, v. S. & L. Building Corporation, 288 U.S. 406, 413, 53 S.Ct. 428, 430, 77 L.Ed. 861.

The question we have to decide is not without difficulty, but in our opinion it should be answered against petitioner's contention. We do not base our opinion on the ground of estoppel. Instead we hold that petitioner has elected to use the installment basis for returning its profit in this transaction and that it cannot now adopt another basis. Petitioner's reply is, it did not choose the installment basis, that the Commissioner forced the basis upon it. But the answer to that contention is that petitioner was obliged to make its return on one basis or the other, and it cannot avoid tax liability simply by neglecting to adopt either. And we think that by acquiescing for four years in the Commissioner's use of the installment basis petitioner manifested its adoption of that method. To this petitioner says that at the time the Commissioner set this transaction up on the installment basis there was no lawful authority for the regulations under which he purported to act—in short, that the return on the installment basis was illegal. With this contention we do not agree. It is perfectly true, as the Board pointed out in the Todd Case, that the tax statutes expressly recognized but two bases of accounting, but we think there is a clear difference between a thing prohibited by statute and a thing merely not recognized by statute. We do not have to go to the extent of holding that the Commissioner had specific statutory power to make regulations permitting returns on the installment basis, although we believe that section 202(f) of the 1921 Revenue Act (42 Stat. 227) and section 202(e) of the 1924 Revenue Act (43 Stat. 253),[2] considered with his authorization to make regulations (as in 1918 Revenue Act, § 1309, 40 Stat. 1143), when coupled with his power to compel the making of a return "upon such basis and in such manner" as in his opinion will clearly reflect income (1918 Revenue Act, § 212(b), 40 Stat. 1064), were enough to justify and support the regulations we have referred to. It is sufficient, we think, to point out that the Commissioner's regulations were in existence and in operation for at least eight years prior to 1926, that Congress, undoubtedly aware of them, did not interfere, and that immediately upon the Board's assertion of their invalidity Congress ratified and confirmed the regu-

[1] Reg. 45, 1918 Revenue Act, articles 42–46; Reg. 62, 1921 Revenue Act, Id.; Reg. 65, 1924 Revenue Act, Id.

[2] Revenue Act of 1924, 43 Stat. 253: "Sec. 202 * * *

"(e) Nothing in this section shall be construed to prevent (in the case of property sold under contract providing for payment in installments) the taxation of that portion of any installment payment representing gain or profit in the year in which such payment is received."

lations by specific statutory provision which it made retroactive. Revenue Act 1926, §§ 212(d), 1208, 44 Stat. 23, 130. In this view it follows that if petitioner in 1918 had itself elected to treat the sale in question as an installment sale under the existing regulations, the Commissioner would have accepted the return as being entirely legal and proper; and in 1926 Congress would have sanctioned and confirmed the action of the taxpayer and the Commissioner so that what had theretofore been illegal in the sense of not being specifically authorized would thereafter not have been subject to challenge.

■ Of course, petitioner had the option in 1918 of returning the entire profit as an accrual of income in that year, just as it had the option of making return on the installment basis, both prior to the 1926 act and under it. But, as we have pointed out, petitioner is in no position to urge now that it had this option. If we were of opinion that the regulations prior to 1926 were unlawful as being contrary to the statute, we should have to find some evidence of waiver or estoppel to support our conclusion. But we believe the regulations were not unlawful and that any trace of impropriety in them was completely eradicated by the things we have related; and hence since petitioner could properly have done for itself what the Commissioner did upon its failure or refusal to act, and since petitioner accepted what he did without assertion of its right to do otherwise, there has been a full and complete election which is now irrevocable. In our opinion there is, in the circumstances we have narrated, no difference between petitioner's having made the election itself and the Commissioner's having made it on its behalf, for when a party with knowledge or means of knowledge of his rights and of the material facts does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or permits the other party to deal with the subject matter under the belief that the transaction has been recognized, there is acquiescence and the transaction though it may have been originally impeachable becomes unimpeachable in equity. Pomeroy's Equity Jurisdiction, 4th Ed., vol. 2, § 965. The conclusion we reach is substantially that reached by the Tenth Circuit in Howbert v. Norris, 72 F.2d 753, and we think there is nothing in Awotin v. Atlas Exch. Nat. Bank, 295 U.S.

209, 55 S.Ct. 674, 79 L.Ed. 1393, or in Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511, or in McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. ——, to the contrary.

The second question arises out of these facts. On May 14, 1921, petitioner executed a gas and oil lease with respect to certain lands owned by it in Louisiana and Texas. Supplementary to the lease petitioner and the lessee agreed that the latter would pay to petitioner as advance royalty and as additional consideration for the execution of the agreement, the sum of $100,000, payable $25,000 in cash; $25,000 on November 15, 1921; $25,000 on May 15, 1922; and $25,000 on November 15, 1922. The Commissioner examined the lease and contract and reached the conclusion that the agreement to pay $50,000 in 1922 constituted that sum taxable income only in that year. Petitioner paid the tax on the royalties received in 1921, but did not pay the tax on the amounts received in 1922, taking the position that, since it was on the accrual basis, the entire $100,000 contracted in 1921 and 1922 was income in 1921 since all the events had occurred which then fixed the liability. The assessment made by the Commissioner for failure to pay on the 1922 royalties was sustained by the Board. It said it was petitioner's duty to report the income received by virtue of the oil and gas contract in its return for 1921; that the Commissioner having determined that the amounts constituted income for the two years and given petitioner the benefit of taxing one-half in each of the two years instead of accruing all in the one year, and petitioner having accepted that determination by paying the tax for 1921, petitioner cannot now insist upon another method the result of which will be to avoid payment of a part of its taxes.

■ We are unable to follow the Board's theory or argument in respect of this item. It is not disputed that petitioner kept its books on the accrual basis, and on this basis the $100,000 royalty payment accrued in 1921. It was not an installment contract, and under the statute tax was payable only in that year. The agreement to pay was definite and positive, but the Commissioner for some reason overlooked this, notwithstanding he then had the written agreement before him, and of his own motion apportioned in his 1926 sixty-day letter the amount for taxation in the two years or, perhaps

more accurately stated, asserted a tax on $50,000 for 1921, and now insists that because petitioner made no protest and paid for 1921 on half of the amount, it is estopped to deny that the other part was taxable in 1922. We know of no ground on which to sustain this position. The contrary was held by the Second Circuit in Helvering v. Brooklyn City R. Co., 72 F.2d 274, 275. That was a case in which a street railway company, pursuant to the requirements of the Public Service Commission, was operating on a fiscal year basis. For some reason it had made its income tax returns on the calendar year basis. In 1926 the Commissioner assessed a deficiency on its 1921 return. The railway petitioned the Board for a review, asserting that the return for 1921 was filed on the wrong basis and that, if filed on the proper basis, there would be no deficiency. The Commissioner contended that the taxpayer was estopped to assert that during all of the years it had filed its returns on the wrong basis. The Circuit Court of Appeals said:

"In the first place it does not appear that he [the Commissioner] did not have immediate access to all the books of the taxpayer in every year in which a return was filed; he may have actually examined them. Therefore the record does not establish an estoppel, even though we assume that a return for a calendar year indicated that the books are kept on [a calendar] basis, as perhaps we should do. Again, nobody can say that if the income of the taxpayer had been assessed on a fiscal year basis from 1918 on, it would have been greater than that returned, except for the omission of the last six months of 1921. A party invoking an estoppel must show that he has been damaged."

In this instance the Commissioner knew petitioner was on the accrual basis, and he had before him the contract showing that petitioner was entitled to the $100,000. Petitioner, it is true, at that time insisted that it should not be taxed on the $100,000 or any part of it because it might thereafter be required to return it, but Commissioner knew there was no legal basis for this claim. Why he chose to divide the sum into two installments in the circumstances does not appear, but the assessment was made by him. No return at all was made by petitioner for the reason that it contended no part of the sum was taxable. In these circumstances it is hard to see where there can

be any estoppel or any overreaching on the part of petitioner. In addition, no advantage is shown to have resulted to the taxpayer in dividing the total sum into two payments; and it is argued, and we think with some force, that the contrary is true, for the tax in 1921 was less than for 1922. But however this may be, nothing is shown as to any request or importunity on the part of petitioner that the sum should be divided, and certainly no action on its part was taken to this end. Commissioner, on the other hand, apparently had all the information and knowledge that petitioner had. In these circumstances, if he allowed the statute to run so that the tax could not be assessed for the year 1921, it is too late to complain now. This was held by the Ninth Circuit as recently as November 11th last in Van Antwerp v. United States, 92 F.2d 871, which was a much stronger case for the government than this we are considering; and we think is also the necessary effect of McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. ——, and Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511.

Affirmed in part; reversed in part; and remanded to the Board.

## On Rehearing.

GRONER, C. J.

Petitioner asks for a rehearing on the ground that when the assessment for 1918 was first made the statute of limitations had run. We think this contention, if true, would not affect the question whether return on the installment basis could have been voluntarily adopted at that time for years not barred. Rehearing is accordingly denied. In the alternative, petitioner asks that our opinion be modified so as to direct the Board of Tax Appeals to allow due credits to petitioner on account of overpayments for the years 1918 through 1921, on the ground that as to those years the statute had run even for a return on the installment basis. This phase of the case was not overlooked in preparing the original opinion, but our conclusion was that the record did not sufficiently show whether in fact the statute of limitations had run for the years in question. No opinion on the point was expressed, therefore, and our decision should be considered as being without prejudice to the full development of this point before the Board if the Board will entertain a motion to that end.