**JOYCE v. GENTSCH, Collector of Internal Revenue.**

No. 9643.

Circuit Court of Appeals, Sixth Circuit.

April 7, 1944.

H. J. Crawford, of Cleveland, Ohio, and Roger Hinds, of New York City (Squire, Sanders & Dempsey, H. J. Crawford, and John A. Duncan, all of Cleveland, Ohio, and Roger Hinds, of New York City, on the brief), for appellant.

Warren F. Wattles, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, and Ray A. Brown, all of Washington, D.C., and Don C. Miller and F. B. Kavanagh, both of Cleveland, Ohio, on the brief), for appellee.

Before SIMONS, HAMILTON, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The appellant, Adrian D. Joyce, was defeated in his action, brought in the United States District Court for Northern Ohio, against Frank F. Gentsch, Collector of Internal Revenue, to recover an alleged overpayment of income taxes for 1934. On March 15, 1935, appellant and his wife filed a joint income tax return for the year in controversy in which a net loss of $30,-299.13 was disclosed. The Deputy Commissioner of Internal Revenue notified appellant, by letter of May 8, 1937, of a proposed deficiency of $224,187.91 in the taxable year. Exception was taken to this proposal; and various conferences between representatives of the taxpayer and of the Commissioner ensued, to the result that, on October 11, 1937, Mr. and Mrs. Joyce signed a so-called Waiver of Restrictions on Assessment and Collection of Deficiency in Tax on printed Form 870 of the Treasury Department, in which the first printed sentence provided: "Pursuant to the provisions of Section 272(d) of the Revenue Act of 1934 [26 U.S.C.A. Int.Rev.Acts, page 744], and/or the corresponding provisions of prior Revenue Acts, the restrictions provided in Section 272(a) of the Revenue Act of 1934, and/or the corres-

ponding provisions of prior Revenue Acts, as amended, are hereby waived and consent is given to the assessment and collection of the following deficiency or deficiencies in income tax and/or excess-profits tax: taxable year ended December 31, 1934 income tax in the sum of $50,-822.30."

The following two typewritten paragraphs were added to and included in the printed waiver form, signed by appellant:

"This Waiver of Restrictions is subject to acceptance by the Deputy Commissioner on the basis of the adjusted liability as hereinabove proposed and if not thus accepted, will have no force or effect.

"If this proposal is accepted the taxpayer agrees (1) to make payment of the above deficiency, together with interest as provided by law, promptly upon receipt of notice and demand from the collector of internal revenue; (2) not to file or prosecute any claim for refund of income taxes for the year 1934 except claims in connection with stock of the Glidden Company received as a bonus and reported as compensation, and (3) upon request of the Commissioner will execute at any time a final closing agreement as to the tax liability, on the foregoing basis, for the said year 1934 under the provisions of section 606 of the Revenue Act of 1928."

In a printed footnote to the Waiver form, the following paragraph is found: "The execution and filing of this waiver at the address shown in the accompanying letter will expedite the adjustment of your income tax liability as indicated above. It is not, however, a final closing agreement under Section 606 of the Revenue Act of 1928 and does not, therefore, preclude the assertion of a further deficiency in the manner provided by law should it subsequently be determined that additional tax is due, nor does it extend the statutory period of limitation for refund, assessment, or collection of the tax."

On October 27, 1937, the Deputy Commissioner advised appellant of the acceptance of the proposed settlement on the basis of a deficiency in the income tax of $50,822.30; and, pursuant to notice and demand, appellant subsequently paid to the collector that amount, with interest. On October 20, 1939, appellant filed with the collector a claim for refund in the amount of $39,000, based on a total loss of the cost price ($50,543.50) of 825 shares of Union Trust Company stock alleged to have be-

come worthless during the calendar year 1934; and, on January 9, 1940, a refund claim was filed by the taxpayer alleging the loss by him of $30,420 on 400 shares of Standard Textile Products Company stock during the taxable year 1934. Both claims for refund on 1934 taxes were rejected by the Commissioner on August 15, 1940.

It appears that appellant, in his income tax return for 1935, which was filed March 16, 1936, had claimed the same two stock loss deductions later embraced in his refund claim for the taxable year 1934. Conferences concerning appellant's 1935 return were held, and a waiver agreement similar to that entered into for the year 1934 was signed by appellant on December 20, 1939. In entering into the latter waiver agreement, the Commissioner disallowed any deduction in the 1935 taxes on account of worthlessness of the stock of Union Trust Company and Standard Textile Products Company. Neither in the income tax return of appellant for 1934, nor in any of the conferences or letters with respect to that year, nor in the "recomputation," was any reference made to loss by appellant in connection with either Union Trust Company or Standard Textile Products Company stock. The taxpayer conceded three comparatively minor items in controversy, leaving three important items to be considered and adjusted in conferences. The main dispute concerned the largest item, relating to options to stockholders to purchase stock of the Glidden Company. This item was adjusted by the Commissioner's representative favorably to the taxpayer. On the trial of this case, Agent Cunningham, of the Bureau of Internal Revenue, testified that he had no doubt that the Board of Tax Appeals would have decided the question in favor of Joyce and other taxpayers similarly situated.

The second item of dispute, settled by conference, pertained to the disallowance of loss on "wash sales" and was resolved against Joyce. The third item involved the determination of the particular year in which the taxpayer sustained loss "on the A. B. Leach Stock." He claimed that his loss in that stock occurred in 1934. But in the case of another taxpayer, the loss had been allowed by the Department as accruing in a prior year. In the settlement with Joyce, a fifty percent compromise was reached on the Leach stock item.

At the time of the recomputation of his 1934 income tax, appellant's claim in his tax return for the year 1935 for deduction of his losses in the Union Trust and Standard Textile stocks as occurring in the latter year was still undetermined and pending before the Treasury Department. The Government had contended in the cases of numerous stockholders of the Union Trust Company that the stock had become worthless in 1933; and not until late in 1939 [2 Cum.Bul. p. 39 for that year] did the Treasury Department publicly announce its acquiescence in the decision of the Board of Tax Appeals, in Watson v. Commissioner, 38 B. T. A. 1026, that the stock became worthless in 1934.

On October 19, 1939, appellant filed his claim for refund, based on appropriate deduction for the year 1934 of his loss in the Union Trust Company stock; and promptly thereafter, in a conference concerning his tax liability for 1935, withdrew his previous claim that his loss in that stock had occurred in 1935.

Appellant testified that he originally claimed his loss in the Standard Textile Products Company stock for 1935, instead of for 1934, for the reason that when representatives of his concern called to sell materials to that company, its credit rating was found to be such that the contemplated sales were not justifiable. He then decided that the Standard was bankrupt. Moreover, after his claim for loss in the stock in 1935 had been rejected, facts concerning the Standard developed by his further investigation and the reports of his auditors convinced him that the company, having been forced to pay a tax of $890,000 for violation of provisions of the National Recovery Act, was "hopelessly insolvent in 1934."

In its findings of fact, the district court stated that, though unable to fix the exact "identifiable event" of the worthlessness of the Standard Textile Products Company stock, "it would appear that it probably was settled upon the filing of the petition in bankruptcy in 1934." It was found more positively that the "identifiable event" of the worthlessness of the Union Trust Company stock was the assessment of 100% stock liability against appellant on or about July 30, 1934. The losses to the taxpayer on both the Union Trust and the Standard Textile stock were therefore found to have accrued during the year 1934.

In a memorandum opinion, the district court stated that it would seem to be a fair finding that before executing either

the 1934 or the 1935 form of Waiver Agreement, appellant had reason to believe that the Standard Textile stock was worthless either in 1934 or in 1935. Prior to the conferences concerning appellant's 1935 tax liability in the latter part of 1939, the Government had determined that the stock became worthless in 1937.

The opinion of the district court recognized the practical difficulty of determining for income tax purposes the time when stocks have become worthless; that often the doubt can be resolved only by judicial decision; and that, under ordinary circumstances, a taxpayer may seek refund within the statutory period when he receives reliable information as to the year in which a deductible stock loss occurred, even though he has claimed the loss in a previous year and his claim has been rejected. But the court concluded that with the knowledge and means of knowledge which the evidence indicated he had concerning the worthlessness of the stock contested, appellant would be held bound by the Waiver Agreement of October 11, 1937, especially in view of the fact that the Commissioner of Internal Revenue is barred by the statute of limitation from making further assessment against appellant.

It is true that when the claims for refund here in controversy were filed, the statute of limitation barred the Commissioner from making additional assessments against appellant on his income for 1934; but it is also true that the period of limitation within which the Commissioner could have asserted a further deficiency did not expire until March 15, 1938, which was more than five months after the Waiver was signed; and there was no evidence produced at the trial, nor any averment made by the Commissioner, that there were any existing facts affording a basis for further deficiency assessment.

The district court, however, concluded that there was no mutual mistake of fact between the parties; that appellant was misled in no particular with respect to circumstances relating to the settlement; and that the waiver agreement executed by appellant on October 11, 1937, and accepted by the Commissioner on October 27, 1937, as set forth on form 870, is a valid agreement which appellant is now barred or estopped from repudiating. Judgment was accordingly entered against appellant.

In our view, the district court erred in the conclusion that appellant is barred in this action by the waiver agreement of October 11, 1937.

■ The Waiver, on Treasury Department Form 870, with the typewritten interlineations, was not binding upon the Government and, therefore, did not bind the taxpayer. The waiver agreement was not signed, approved, or accepted by anyone authorized by the Acts of Congress to bind the Government to a tax compromise, or to a closing agreement. The statutes are specific. "The Commissioner of Internal Revenue, with the advice and consent of the Secretary of the Treasury, may compromise any civil or criminal case arising under the internal-revenue laws instead of commencing suit thereon; * * *." Rev.Stat.Sec. 3229, Act of July 20, 1868, c. 186, Sec. 102, 15 Stat. 166, 26 U.S.C.A. Sec. 158, Int.Rev.Code, § 3761. The operative statute, concerning closing agreements, is found in Section 606 of the Revenue Act of 1928, ch. 852, 45 Stat. 874, 26 U.S.C.A. Int.Rev.Acts, page 458, now Internal Revenue Code, Sec. 3760, 53 Stat. 462, 26 U.S.C.A. Int.Rev.Code, § 3760. See footnote.[1]

---

[1] "§ 606. Closing Agreements. (a) Authorization. The Commissioner (or any officer or employee of the Bureau of Internal Revenue, including the field service, authorized in writing by the Commissioner) is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal-revenue tax for any taxable period ending prior to the date of the agreement. (b) Finality of Agreements. If such agreement is approved by the Secretary, or the Undersecretary, within such time as may be stated in such agreement, or later agreed to, such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—(1) the case shall not be reopened as to the matters agreed upon or the agreement modified, by any officer, employee, or agent of the United States, and (2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded."

There was no proof whatever, or indeed even an allegation, that the waiver agreement of October 11, 1937, was a compromise agreement or a closing agreement, executed, approved, or entered into with the advice and consent of the Secretary, or an Undersecretary, or any Assistant Secretary, of the Treasury. The instrument itself declared that it was not a final closing agreement and expressly provided that further tax deficiency could be assessed should it be subsequently determined that additional tax was due. Thus, the instrument in terms did not even purport to bind the Government.

In Botany Worsted Mills v. United States, 278 U.S. 282, 288, 289, 49 S.Ct. 129, 131, 73 L.Ed. 379, the Supreme Court, finding it plain that no compromise under the internal revenue laws is authorized by Section 3229 of Revised Statutes, 26 U.S. C.A. Int.Rev.Code, § 3761, which is not assented to by the Secretary of the Treasury, held that a taxpayer was not precluded by an informal agreement from recovering any portion of the tax paid to which it would be otherwise entitled. The opinion stated: "We think that Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised, requiring therefor the concurrence of the Commissioner and the Secretary, and prescribing the formality with which, as a matter of public concern, it should be attested in the files of the Commissioner's office; and did not intend to intrust the final settlement of such matters to the informal action of subordinate officials in the Bureau. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode."

Upon the authority of the Botany Mills case, it was held in L. Loewy & Son v. Commissioner of Internal Revenue, 2 Cir., 31 F.2d 652, 654, that where a taxpayer, in reply to notification of an additional assessment, accepted as correct the Commissioner's statement of the net additional tax liability and agreed to its assessment and subsequently made payment, no defense of accord and satisfaction, or estoppel, could be successfully set up as a bar against the assessment and collection of additional taxes. The observation was made that a binding adjustment of a disputed tax can be had only in the manner prescribed by statute; and that the Commissioner of Internal Revenue was free to revise his fig-

ures and make his final assessment at any time within the period allowed by statute.

Upon the principle of the Botany Mills case, the consent of the Secretary of the Treasury has been considered by circuit courts of appeal as essential to the validity of a stipulation concerning tax liability, where such stipulation is in the nature of a compromise. Brast v. Winding Gulf Colliery Co., 4 Cir., 94 F.2d 179; Hughson v. United States, 9 Cir., 59 F.2d 17, 19; Anderson, Collector of Internal Revenue, v. P. W. Madsen Inv. Co., 10 Cir., 72 F.2d 768, 769, 770. Compare Schneider v. United States, 6 Cir., 119 F.2d 215, 217.

In the instant case, the Government was not bound by the waiver agreement; not only because of a lack of authority from the Secretary of the Treasury for its execution, but also because by its very terms, an intention not to bind the Government to a final settlement was manifest. The right to assess a further deficiency was expressly reserved. The waiver agreement was, therefore, entirely lacking in essential mutuality.

But the appellee contends that, inasmuch as he accepted the payment of $50,822.30 by the taxpayer in settlement of a determined income tax deficiency of $224,187.91 for the calendar year 1934 and the statute of limitation now bars any assessment or collection by the Commissioner of taxes for that year, the appellant taxpayer is precluded from claiming a refund of the major portion of the amount so paid by him.

The collector rests his argument, not upon the contract, but upon grounds of equitable estoppel. He cites Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, where the Chief Justice demonstrates that an action brought to recover a tax erroneously paid, although an action at law, is equitable in function and governed by equitable principles; wherefore, the defendant may show any state of facts which, according to equitable standards, would deny the plaintiff's right of recovery. Citing R. H. Stearns Co. v. United States, 291 U.S. 54, 61, 62, 54 S.Ct. 325, 78 L.Ed. 647, the jurist stated that the statute of limitation does not over-ride a defense based on the estoppel of the taxpayer. It was said that the statutory bar to the right of action for collection of a tax does not prevent reliance upon a defense which is neither a set-off nor a counter-claim, "but is an equit-

able reason, growing out of the circumstances of the erroneous payment, why petitioners ought not to recover." [301 U. S. 532, 57 S.Ct. 854, 81 L.Ed. 1265.] The defense was likened unto an equitable recoupment; and Bull v. United States, 295 U.S. 247, 262, 55 S.Ct. 695, 79 L.Ed. 1421, was quoted to the effect that "such a defense is never barred by the statute of limitations so long as the main action itself is timely."

Why then was it not within the province, power and duty of the Government to reopen by the defense of recoupment, in the present action brought by the taxpayer, all issues pertaining to any added 1934 tax liability claimed to rest upon appellant? See Bull v. United States, supra; Crossett Lumber Co. v. United States, 8 Cir., 87 F.2d 930, 109 A.L.R. 1348.

No effort was made by the Government, however, to reduce the taxpayer's present claim by interposition of the defense of recoupment. Indeed, there is no intimation that, if made, such defense would have been successful. To the contrary, from the whole record, it appears reasonable to infer that—his present claim aside—there was collected from appellant all income taxes which he justly owed for the year 1934. At most, only the item of loss on the "A. B. Leach stock," which was compromised on a fifty percent basis, seems reasonably controvertible. This item, if rejected in toto, would, by recoupment, only reduce appellant's present claim for refund pro tanto, and would not defeat it in full.

Without extending this opinion to undue length by further discussion of pertinent authority, we think that, in the circumstances of the case, preponderant weight against appellee's argument, based upon the doctrine of estoppel, will be found in the rationale of the following cases: Van Antwerp v. United States, 9 Cir., 92 F.2d 871, 875; United States v. S. F. Scott & Son, Inc., 1 Cir., 69 F.2d 728, 732; Helvering v. Schine Chain Theatres, Inc., 2 Cir., 121 F.2d 948, 950; Hull v. Commissioner of Internal Revenue, 4 Cir., 87 F.2d 260, 262; Louis Werner Saw Mill Co. v. Helvering, 68 App.D.C. 267, 96 F.2d 539, 543; Helvering v. Williams, 8 Cir., 97 F.2d 810, 812; Commissioner v. Yates, 7 Cir., 86 F.2d 748, 750.

The facts of Robinson v. Commissioner of Internal Revenue, 6 Cir., 100 F.2d 847, in which estoppel barred the taxpayer, clearly differentiate it from the case now before us. The same comment may be applied to the following cases, cited by appellee, wherein the taxpayer was held estopped by reason of an erroneous statement or omission in a return for a previous year. Commissioner of Internal Revenue v. Liberty Bank & Trust Co., 6 Cir., 59 F.2d 320; Bothwell v. Commissioner of Internal Revenue, 10 Cir., 77 F.2d 35; Alamo Nat. Bank of San Antonio v. Commissioner of Internal Revenue, 5 Cir., 95 F.2d 622.

No weight is attached to Backus v. United States, 59 F.2d 242, 256, 75 Ct.Cl. 69, emphasized by the appellee, for the reason that, in that case, the controverted compromise tax settlement had been approved by the Secretary of the Treasury. Also, in the following cases cited by appellee the compromise settlement of the taxes had been approved by the Secretary of the Treasury: Hord v. United States, 59 F.2d 125, 127, 75 Ct.Cl. 516; Nelson-Wiggen Piano Co. v. United States, 7 Cir., 84 F.2d 47, 48; Ely & Walker Dry Goods Co. v. United States, 8 Cir., 34 F.2d 429; Ayer v. White, 1 Cir., 62 F.2d 921, 922. It should be observed, too, that in these cases the Commissioner had actually released the taxpayer from liability, while in the case at bar he did not purport to do so.

We fail to find in the record evidence that any misrepresentation concerning his losses in the Union Trust or Standard Textile stock was made by appellant to the Government. For a sufficient period of time before the Government's right to reassessment for 1934 was barred by the statute of limitations, the Commissioner possessed all essential information pertaining to the affairs of the Union Trust Company and the Standard Textile Products Company upon which to base an opinion as to when the stocks of those two companies became worthless. In these circumstances, if he allowed the statute of limitations to run without taking appropriate action upon the strength of the information which he possessed, it is now too late for him to complain. See Louis Werner Saw Mill Co. v. Helvering, 68 App.D.C. 267, 96 F.2d 539, 543, supra. As was well said in Hull v. Commissioner of Internal Revenue, 4 Cir., 87 F.2d 260, 262, supra: "Estoppel is an affirmative defense, and the burden is upon the party asserting

it to establish both the facts necessary to support it and the fairness of its application, and a party even knowing the facts, or in a position to know them, cannot claim the benefit of estoppel." It was noted in Helvering v. Schine Chain Theatres, Inc., 2 Cir., 121 F.2d 948, 950, supra, that if all the facts were available to the Commissioner, he was justified in relying upon the tax return for no more than the taxpayer's "honest understanding of his liabilities," and that if the Commissioner "wished to avoid the running of the statute, he must make up his mind for himself."

█ The record discloses no evidence of misrepresentation of fact upon which the Government relied, or any failure of the taxpayer to speak when he should have spoken, upon which the defense of estoppel can properly be grounded. See Helvering v. Williams, supra, and Commissioner of Internal Revenue v. Yates, supra.

Estoppel is not properly invoked, moreover, for the reason that appellee has failed to show that he has been damaged. Helvering v. Brooklyn City R. Co., 2 Cir., 72 F.2d 274. See also Helvering v. Schine Chain Theatres, Inc., supra. Cf. Territory of Arizona v. Copper Queen Mining Co., 233 U.S. 87, 95, 34 S.Ct. 546, 58 L.Ed. 863.

Upon careful consideration of the principles upon which the doctrine of estoppel rests, our conclusion is that the essential elements for its application are lacking in this case.

█ The final contention of the appellee is that the taxpayer's loss of his investment in the stock of Standard Textile Products Company did not occur in 1934, and is therefore not an allowable deduction for that year. It is, of course, true that a stock loss deduction may be allowed only for the year in which the stock actually became worthless. Also, the taxpayer must claim his deduction for the year "in which events are such as to furnish convincing evidence that the stock has in fact become worthless in that year;" and "the mere fact of a receivership or reorganiza-

tion proceeding is not alone sufficient to fix the date of worthlessness." Mahler v. Commissioner of Internal Revenue, 2 Cir., 119 F.2d 869, 872. Compare A. R. Jones Oil & O. Co. v. Commissioner, 10 Cir., 114 F.2d 642, 646. Nor is the date of worthlessness necessarily that on which a petition for reorganization is filed. Miami Beach Bay Shore Co. v. Com'r of Int. Revenue, 5 Cir., 136 F.2d 408. As was said in the Mahler case, supra, 119 F.2d page 872: "In establishing the date of worthlessness, the taxpayer is aided by the rule that the date is to be fixed by 'identifiable events' which form the basis of reasonable grounds for abandoning any hope for the future."

█ In the instant case, the district court said in its opinion that "all subsequent developments and events following the filing of bankruptcy proceedings lend fairly persuasive support to a finding that the filing of the bankruptcy proceeding was the 'identifiable event'" determining the worthlessness of the Standard Textile Products stock. It was considered that, for all practical purposes, the stock was worthless on the day the petition was filed and that "nothing that subsequently happened changed the financial picture."

The record reveals substantial evidence in support of this finding of the district court, whose reasoning was in consonance with opinions of this court. In Jeffery v. Commissioner of Internal Revenue, 6 Cir., 62 F.2d 661, our holding was that, where bankruptcy had intervened and there was no possibility that the taxpayer would derive value from his investment in stock except in the event of a proposed and very problematical reorganization, his loss was sustained in the year in which bankruptcy occurred. See also Gowen v. Commissioner of Internal Revenue, 6 Cir., 65 F.2d 923.

The judgment of the district court is reversed, with mandate that judgment be entered in favor of the appellant, against the appellee Collector of Internal Revenue, as prayed in the complaint.