**STEIDEN STORES, Inc. v. GLENN.**

Civ. A. No. 1456.

United States District Court
W. D. Kentucky, at Louisville.

Aug. 2, 1950.

ended June 30, 1942, June 30, 1943, and June 30, 1944, in the aggregate amount of $170,872.44, plus interest. The action was instituted under the provisions of Section 41(5), [revised Section 1340], 28 U. S.C.A., and tried December 13, 1948.

The two questions involved are whether the Commissioner of Internal Revenue properly disallowed, as deductions under Section 23(a) (1) (A), Internal Revenue Code, 26 U.S.C.A. § 23(a) (1) (A), portions of the salaries and bonuses paid to taxpayer's officers and employees in the tax years involved, as not being reasonable allowances for personal services rendered by these officers and employees, and whether the taxpayer is estopped to deny the correctness of the Commissioner's findings with reference to the disallowed portions of the salaries and bonuses for the fiscal years ended June 30, 1942 and 1943.

The Court makes the following—
Findings of Fact.

1. Plaintiff is now and was during the tax years involved and has been since the year 1931, a corporation duly and legally organized under the laws of Kentucky, with its principal office and place of business located at Louisville, Jefferson County, Kentucky.

2. Defendant was during the tax years involved and at all times subsequent thereto, the duly appointed, qualified and acting Collector of Internal Revenue in and for the District of Kentucky.

3. At all times material herein, plaintiff kept its books and filed its income tax returns on the basis of a fiscal year ended June 30th.

Chas. I. Dawson, Bernard H. Barnett, Bullitt, Dawson & Tarrant, Louisville, Ky. for plaintiff.

Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, Homer R. Miller, Sp. Assts. to the Atty. Gen., David C. Walls, U. S. Atty., Matthew O. Henchey, Asst. U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

In this action, plaintiff seeks to recover federal income taxes for the fiscal years

4. Plaintiff filed income tax returns for the fiscal years ended June 30, 1942, June 30, 1943, and June 30, 1944. In each of these returns, plaintiff claimed as deductions salaries and bonuses paid to its officers and key employees during said fiscal years, pursuant to the provisions of Section 23(a) (1) (A), Internal Revenue Code as ordinary and necessary expenses paid during the tax year in carrying on a trade or business, in the form of reasonable salaries or other compensation for personal serv-

ices actually rendered. These returns were audited by agents of the Commissioner of Internal Revenue and as a result of said audit portions of the salaries and bonuses claimed as deductions were disallowed as deductions by the Commissioner.

The following table sets forth by tax years, the name of the officer or key employee, the salary and bonus paid to the particular officer or employee and the amount allowed as deductions by the Commissioner of Internal Revenue:

### Fiscal year ended June 30, 1942

| Name of Officer or Employee | Amounts paid and claimed as deductions | | | Total salary and bonus allowed |
| --- | --- | --- | --- | --- |
| | Salary | Bonus | Total | |
| L. W. Cole | $10,000.00 | $15,885.85 | $25,885.85 | $18,741.15 |
| W. A. Steiden | 10,000.00 | 15,885.85 | 25,885.85 | 18,741.15 |
| L. C. Steiden | 5,500.00 | 15,885.85 | 21,385.85 | 14,241.10 |
| D. T. Petty | 5,000.00 | 15,885.85 | 20,885.85 | 13,741.10 |
| J. J. Murphy | 5,000.00 | 15,885.85 | 20,885.85 | 13,741.10 |
| R. B. Laufer | 4,500.00 | 15,885.85 | 20,885 | 13,741.10 |
| D. N. Duncan | 4,000.00 | 15,885.85 | 19,885.85 | 12,741.10 |
| L. D. Cole | 2,044.00 | 15,885.85 | 17,929.85 | 7,835.00 |

### Fiscal year ended June 20, 1943

| | Salary | Bonus | Total | |
| --- | --- | --- | --- | --- |
| L. W. Cole | 10,000.00 | 32,849.84 | 42,849.84 | 28,697.91 |
| W. A. Steiden | 10,000.00 | 32,849.84 | 42,849.84 | 28,697.91 |
| L. C. Steiden | 5,500.00 | 32,849.84 | 38,349.84 | 24,197.91 |
| D. T. Petty | 5,000.00 | 32,849.84 | 37,849.84 | 23,697.91 |
| J. J. Murphy | 5,000.00 | 32,849.84 | 37,849.84 | 23,697.91 |
| R. B. Laufer | 2,626.00 | 32,849.83 | 35,475.83 | 11,254.80 |
| D. N. Duncan | 4,000.00 | 32,849.83 | 36,849.83 | 22,697.91 |

### Fiscal Year ended June 30, 1944

| | Salary | Bonus | Total | |
| --- | --- | --- | --- | --- |
| L. W. Cole | 10,000.00 | 27,834.56 | 37,834.56 | 28,697.91 |
| W. A. Steiden | 10,000.00 | 27,834.56 | 37,834.56 | 28,697.91 |
| L. C. Steiden | 5,500.00 | 27,834.56 | 33,334.56 | 24,197.91 |
| D. T. Petty | 5,000.00 | 27,834.56 | 32,834.56 | 23,697.91 |
| J. J. Murphy | 5,000.00 | 27,834.56 | 32,834.56 | 23,697.91 |
| D. N. Duncan | 4,000.00 | 27,834.56 | 31,834.56 | 22,697.91 |

5. As a result of the disallowance of portions of the salaries and bonuses, as above set out, the Commissioner made additional taxes of $120,000, plus interest against plaintiff for the fiscal years ended June 30, 1942, and June 30, 1943, and June 30, 1944. The Commissioner assessed additioinal taxes of $120,000, plus interest for the fiscal years ended June 30, 1942, and June 30, 1943. On June 27, 1945, the plaintiff paid to this defendant as Collector of Internal Revenue, the sum of $120,000 principal, plus $14,736.33 interest, total $134,736.33, which satisfied said assessment in full. For the fiscal year ended June 30, 1944, the Commissioner made an additional assessment against plaintiff. The amount of said assessment, attributable to the disallowance of bonuses and salaries was $50,872.44, plus interest. Plaintiff paid to defendant, as Collector of Internal Revenue, the full amount of said assessment in the amount of $50,872.44 principal, and $7,046 interest, total $57,918.44 the last installment of said payments being made on May 16, 1947. All of the additional assessments of income taxes, as set forth herein, were made as the result of the disallowance of the salaries and bonuses as above set forth.

**6.** Within the time prescribed by law, plaintiff filed claims for refund for the amounts of taxes paid pursuant to the additional assessments described above, and for each of the tax years ended June 30, 1942, June 30, 1943, and June 30, 1944, the claims for refund being based on the ground that the Commissioner, in disallowing any portions of the salaries and bonuses claimed, was in error. The Commissioner rejected each of the claims for refund and mailed notices of the rejection to the plaintiff by registered mail. This suit was instituted within two years after the mailing of said notices.

**7.** In 1919, W. A. Steiden and W. L. Cole started in business in the operation of two chain grocery stores, which business was incorporated under the name of Piggly Valley Company. The business grew from these two stores to 107 stores located in Kentucky and Southern Indiana, together with a subsidiary in Cincinnati. During most of the periods of these operations, D. T. Petty, J. J. Murphy, R. B. Laufer, D. N. Duncan, L. C. Steiden and Louis D. Cole were associated with L. W. Cole and W. A. Steiden in this business in various capacities. L. C. Steiden was the son of W. A. Steiden and Louis D. Cole was the son of L. W. Cole. During the period of these operations this business was highly successful. In 1928, the owners of the business sold out to Kroger Grocery & Baking Company for $4,000,000. Between the date of the sale and until sometime in 1931, the men above mentioned worked for Kroger during most of the period.

In 1931, W. A. Steiden and L. W. Cole purchased from one Clarence Saunders (a pioneer in the chain grocery business) at a bankrupt sale, fifteen chain grocery stores located in Louisville, Kentucky, and plaintiff was organized to own and operate these stores. These stores were operated under the Steiden and Cole management until July 1, 1945, as of which date Winn & Lovett, a chain grocery organization, purchased all of the outstanding stock and thereby took over the control of plaintiff.

**8.** During the early years of their connection with Steiden Stores, the key personnel received the following salaries:

| | |
|---|---|
| L. W. Cole | $6,000.00 |
| W. A. Steiden | 6,000.00 |
| L. C. Steiden | 3,600.00 |
| D. T. Petty | 3,520.40 |
| J. J. Murphy | 3,520.40 |
| R. B. Laufer | 3,380.00 |
| D. N. Duncan | 3,120.00 |

**9.** During the fiscal years ended June 30, 1942, June 30, 1943, and June 30, 1944, all of the stock of plaintiff was owned by its officers, key employees or their families. In the fiscal years ended June 30, 1942, and June 30, 1943, plaintiff's outstanding stock consisted of 1,475 shares and during the fiscal year ended June 30, 1944, consisted of 1,465 shares. Of said outstanding stock plaintiff's officers and key employees owned 982 shares in the fiscal year ended June 30, 1942, 929 shares in the fiscal year ended June 30, 1943, and 1,013 shares in the fiscal year ended June 30, 1944.

**10.** During the fiscal years here involved, the respective duties and responsibilities of the officers and key employees whose salaries and bonuses are here involved, may be briefly summarized as follows:

L. W. Cole was chairman of plaintiff's board; in charge of finance matters and traveling and acted as personnel manager.

W. A. Steiden was plaintiff's general manager. He and L. W. Cole were the company's principal executive officers. Mr. & Mrs. L. W. Cole and W. A. Steiden and his son, L. C. Steiden, constituted and made up plaintiff's board of directors. These parties received no separate compensation for their services as directors and the evidence does not disclose how much time and responsibility was attributable to their services as directors separate and apart from their duties as officers of the company.

L. C. Steiden was plaintiff's secretary and treasurer and handled all grocery buying, advertising, sales, promotion, warehouse distribution and in the latter years involved was in charge of O.P.A. matters.

D. T. Petty was meat and produce buyer and superintendent of meat operations

J. J. Murphy was in charge of plaintiff's produce department.

R. B. Laufer was in charge of plaintiff's bookkeeping and auditing.

D. N. Duncan was personnel superintendent.

L. D. Cole was assistant to the meat buyer and a supervisor. W. A. Steiden, L. C. Steiden, D. T. Petty, J. J. Murphy and D. N. Duncan devoted their full time to their respective positions during all the tax years involved. L. W. Cole devoted a portion of his time as president of the National Association of Food Chains, an organization composed of large and small chain grocery stores. The evidence does not disclose whether he received any additional compensation for that service. R. B. Laufer was in the military service from January 1943 to August 1944. L. D. Cole was with plaintiff for only about one-half of the fiscal year ended June 30, 1942, being with the O.P.A. in Washington during the remaining half of that year. During the fiscal years ended June 30, 1943, and June 30, 1944, he was in the military service and apparently received no salary or bonus while there. Other than as mentioned above, Messrs. L. W. Cole, Laufer and L. D. Cole devoted their full time to their positions with plaintiff.

10. Prior to the fiscal year ended June 30, 1935, the officers and key employees mentioned above and here involved drew no bonuses. Their salaries during those years were as follows:

| Name | 1932 | 1933 | 1934 |
|---|---|---|---|
| L. W. Cole | $6,000.00 | $6,116.20 | $6,000.80 |
| W. A. Steiden | 6,000.00 | 6,116.20 | 6,000.80 |
| L. C. Steiden | 3,600.00 | 3,670.25 | 3,602.00 |
| D. T. Petty | 3,520.40 | 3,520.40 | 3,520.40 |
| J. J. Murphy | 3,520.40 | 3,520.40 | 3,520.40 |
| R. B. Laufer | 3,380.00 | 3,380.00 | 3,380.00 |
| D. N. Duncan | 3,120.00 | 3,120.00 | 3,120.00 |

12. There was no binding contract or agreement to pay the respective officers and key employees the amounts which they received in the respective years. However, plaintiff's board of directors adopted certain resolutions fixing the compensation of said officers and key employees as shown below. The evidence does not establish that the officers and key employees worked for inadequate compensation in early years under any binding contract or agreement requiring the payment of compensation which was more than reasonable in the fiscal years ended June 30, 1942, June 30, 1943 and June 30, 1944.

On December 29, 1934 (which was about the middle of the fiscal year ended June 30, 1935) plaintiff's board of directors adopted a resolution which provided that at the end of the fiscal year ended June 30, 1935, and until further action of the board, plaintiff's net profits and earnings should be distributed as follows—

(a) $25,000 to be set aside as a credit to operating surplus account.

(b) A sum equal to 10% of the par value of outstanding stock be distributed to stockholders in proportion to their holdings and as dividends.

(c) The balance should be divided into seven equal shares and subject to liquidation of the company's indebtedness one of said shares to be paid to each of the following: L. W. Cole, W. A. Steiden, L. C. Steiden, D. N. Duncan, D. T. Petty, J. J. Murphy, R. B. Laufer.

Said officers and key employees were paid bonuses in addition to their salaries in accordance with this resolution for the fiscal years ended June 30, 1935 to June 30, 1941, inclusive.

On June 10, 1941, plaintiff's board of directors adopted a resolution with respect to the distribution of the net earnings for the fiscal year ended June 30, 1942 and providing as follows—

(a) Payment of dividends in an amount equal to 10% of the par value of outstanding stock.

(b) Payment of state and federal taxes.

(c) Payment of bonuses to persons other than officers and key employees in an amount equal to 10% of the salaries of such persons for the preceding six months of their employment immediately prior to June 30, 1942.

(d) The balance was to be divided into eight equal shares each share to be distributed as a bonus to each of the following: L. W. Cole, William A. Steiden, L. C. Steiden, D. T. Petty, J. J. Murphy, Robert P. Laufer, D. N. Duncan, and L. D. Cole.

On June 10, 1942, the board of directors adopted a resolution re-adopting the foregoing resolution to be effective for the fiscal year ended June 30, 1943. A similar resolution was adopted on June 11, 1943, with respect to continuing the arrangement and as to the fiscal year ended June 30, 1944.

13. The total dividends paid by plaintiff to its stockholders for the tax years ended June 30, 1942, June 30, 1943, and June 30, 1944, are as follows:

| Year | Amount |
|------|--------|
| 1942 | $14,750.00 |
| 1943 | 14,650.00 |
| 1944 | 14,650.00 |

| Name | Percentage Individually | Percentage With Wife |
|------|------------------------|----------------------|
| L. W. Cole | 23.254 | 28.339 |
| W. A. Steiden | 19.119 | 25.898 |
| L. C. Steiden | 5.831 | 5.831 |
| D. T. Petty | 5.356 | 5.356 |
| J. J. Murphy | 5.356 | 5.356 |
| R. B. Laufer | 1.695 | 1.695 |
| D. N. Duncan | 2.373 | 2.373 |
| L. D. Cole | 3.593 | 3.593 |

14. The contract, under which the contingent compensation was paid for the taxable years here involved and for prior years, was a reasonable one; and the entire compensation—fixed and contingent—received by each of the key men for the taxable years here involved, was an ordinary and necessary expense of the business of Steiden Stores, Inc., and reasonable in amount.

15. The amounts sought to be recovered in this case represent additional taxes assessed against the plaintiff for the taxable years here involved, as a result of the disallowance by the Commissioner of Internal Revenue of a portion of the contingent compensation mentioned in the preceding findings for each of the years involved. Claims for refund of the amounts paid, together with interest thereon, were regularly filed within the time provided by law, and were denied by the Commissioner; and this action was instituted within the time permitted by law.

The total compensation, including salaries and bonuses paid to the officers and key employees of plaintiff during the tax years here involved was as follows:

| Year | Amount |
|------|--------|
| 1942 | $173,130.80 |
| 1943 | 272,097.16 |
| 1944 | 206,507.36 |

The additional compensation paid as bonuses was not distributed to the officers and key employees in proportion to their stockholdings in plaintiff corporation.

The percentage of the total outstanding stock owned by each of the key executives individually, and by each in connection with his wife, was as follows:

16. On June 6, 1945, plaintiff submitted to the Commissioner of Internal Revenue, a written offer agreeing to the immediate assessment and collection of income tax deficiencies for the fiscal years ended June 30, 1942, and June 30, 1943, and providing for no deficiency for the fiscal year ended June 30, 1941. Prior to June 6, 1945, the Commissioner had proposed assessments against plaintiff for the fiscal years ended June 30, 1942 and June 30, 1943, in the aggregate amount of approximately $201,000. The Commissioner had also proposed an assessment of income taxes for the fiscal year ended June 30, 1941, for the amount of $14,004.48, plus interest.

Under the offer, plaintiff consented to the immediate assessment and collection of income taxes for the fiscal years ended June 30, 1942, and June 30, 1943, in the total amount of $120,000 plus interest, with no assessment to be made for the fiscal year ended June 30, 1941. The offer provided in part as follows:

"This offer of waiver of restrictions on assessment and collection of deficiency in tax is subject to acceptance by or on behalf of the Commissioner of Internal Revenue, on the basis of the adjusted liability as hereinabove set forth, and is to take effect as such from the date said adjusted liability is accepted by or on behalf of the Commissioner as a basis for closing the case, and if not thus accepted will have no force or effect.

"If this agreement is accepted by or on behalf of the Commissioner, the case shall not be reopened nor shall any claim for refund under Section 722, or otherside, be filed or prosecuted respecting the taxes for the years above stated, in the absence of fraud, malfeasance, concealment or misrepresentation of material fact, or of an important mistake in mathematical calculations, and as hereinafter provided, and the taxpayer also agrees: (1) to make payment of the above deficiency, together with interest, as provided by law, promptly upon receipt of notice and demand from the Collector of Internal Revenue, and not to file an offer in compromise respecting such liability; and (2) upon request of the Commissioner of Internal Revenue to execute at any time a final closing agreement as to the tax liability, on the foregoing basis, for said years under the provisions of Section 3760 of the Internal Revenue Code."

On June 25, 1945, said offer was accepted by J. F. Gregory, a Division Head of the Technical Staff, Bureau of Internal Revenue, on behalf of the Commissioner of Internal Revenue and on June 28, 1945, plaintiff was advised of such acceptance. Mr. Gregory had the authority to act for and on behalf of the Commissioner.

Mimeographs issued by the Treasury Department contained instructions to various field officers to the effect that where cases were closed by the Technical Staff under procedure such as followed here, that it would be the policy of the Treasury Department not to reopen these cases in the absence of fraud, malfeasance, concealment, misrepresentation of material facts or important mistakes in mathematical calculations.

The Secretary of the Treasury never formally approved this settlement. No closing agreement bearing the Secretary's approval was ever formally executed pursuant to the provisions of Section 3760, Internal Revenue Code, 26 U.S.C.A. § 3760.

The Commissioner of Internal Revenue treated the case as having been closed and did not assert any additional assessments for the years ended June 30, 1942, and June 30, 1943, over and above the amounts agreed to under the settlement and did not make any assessments for the fiscal year ended June 30, 1941.

December 18, 1946, plaintiff filed a claim for refund for the amounts paid pursuant to the settlement for the fiscal years ended June 30, 1942, and June 30, 1943. On that date the statute of limitations barred the Commissioner from making any additional assessments for either of these fiscal years and the statute of limitations barred the making of any assessment for the fiscal year ended June 30, 1941.

Plaintiff took no other steps to revoke or rescind this agreement or withdraw the offer or notify the Commissioner or other Government officials that it was not proceeding under the agreement, until January 8, 1947, when it formally notified the Commissioner that acting upon legal advice, it considered that it was not bound by the settlement; that it refused, although requested by the Commissioner, to execute a closing agreement.

Previously, on December 23, 1946, the Commissioner had written plaintiff requesting it to execute a closing agreement in accordance with its offer. Plaintiff acted upon legal advice in entering into the arrangement above described with the Commissioner.

The Commissioner of Internal Revenue acted upon and relied upon the agreement until after the statute of limitations barred the making of additional assessments for the fiscal years ended June 30, 1941, June 30, 1942 and June 30, 1943.

## Conclusions of Law.

The decision of this case lies in the proper answer to the three following questions—

I. Was the bonus compensation paid the key employees reasonable, and therefore a proper deduction as a business expense under Section 23(a) (1) (A) of Title 26 U.S.C.A.?

II. Is the "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax" (Form 870) valid, though admittedly not approved by the Secretary, Under Secretary or Assistant Secretary of the Treasury, as required by Sections 3760 and 3761 of Title 26 U.S.C.A.?

III. If the Waiver Agreement does not meet the legal requirements of Sections 3760, 3761 of Title 26, is plaintiff estopped to deny the binding effect of the agreement?

I. Section 23(a) (1) (A) of the Internal Revenue Code provides for deductions from gross revenue: "In computing net income there shall be allowed as deductions:

"(a) Expenses.

"(1) Trade or business expenses.

"(A) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered."

Applicable portions of Treasury Regulations III, promulgated under the Internal Revenue Code are:

Sec. 29.23(a)-6(2) provides—"The form or method of fixing compensation is not decisive as to deductibility. While any form of contingent compensation invites scrutiny as a possible distribution of earnings of the enterprise, it does not follow that payments on a contingent basis are to be treated fundamentally on any basis different from that applying to compensation at a flat rate. Generally speaking, if contingent compensation is paid pursuant to a free bargain between the employer and the individual made before the services are rendered, not influenced by any consideration on the part of the employer other than that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid."

Section 29.23(a)-8 provides—"Bonuses to employees will constitute allowable deductions from gross income when such payments are made in good faith and as additional compensation for the services actually rendered by the employees, provided such payments, when added to the stipulated salaries, do not exceed a reasonable compensation for the services rendered. It is immaterial whether such bonuses are paid in cash or in kind or partly in cash and partly in kind. Donations made to employees and others, which do not have in them the element of compensation for services, are not deductible from gross income."

In Roth Office Equipment Company v. Gallagher, 6 Cir., 172 F.2d 452, 455, the Court approved the principle of bonus compensation, recognizing the element of that principle which provides for payment of liberal compensation in good years and moderate compensation in lean years. The Court there pointed out that increased business brought about by war conditions was of little materiality and does not establish unreasonableness of the bonus compensation where greater responsibilities and increased work are brought about.

The Court in Wright-Bernet, Inc., v. Commissioner, 6 Cir., 172 F.2d 343, reversed the Tax Court in its refusal to allow bonus compensation, to stockholder-employees whose work was largely responsible for handling the business which increased the net sales from $80,000 in 1935 to $757,000 in 1942, an increase of 945 percent.

In the case at bar, the Company had an earned surplus of $1,144.03 in 1935, as against $272,602.62 at the end of the fiscal year July 1, 1943–June 30, 1944.

The bonus compensation paid to each of the key employees in July 1935 was

$2,604.89 as against $32,949.84 for the fiscal year ended June 30, 1943.

In Mayson Manufacturing Company v. Commissioner, 6 Cir., 178 F.2d 115, 119, the Court provided the rule for determining whether bonus compensation is ordinary and necessary business expense: "Although every case of this kind must stand upon its own facts and circumstances, it is well settled that several basic factors should be considered by the Court in reaching its decision in any particular case. Such factors include the employee's qualifications; the nature, extent and scope of the employee's work; the size and complexities of the business; a comparison of salaries paid with the gross income and the net income; the prevailing general economic conditions; comparison of salaries with distributions to stockholders; the prevailing rates of compensation for comparable positions in comparable concerns; the salary policy of the taxpayer as to all employees; and in the case of small corporations with a limited number of officers the amount of compensation paid to the particular employee in previous years. The action of the Board of Directors of a corporation in voting salaries for any given period is entitled to the presumption that such salaries are reasonable and proper."

Applying the rule to the facts in the case at bar, it is apparent that the bonus compensation, though so large in the fiscal years ended June 30, 1942 and June 30, 1943, when considered in relation to the basic salaries of the key employees, as to strike the mind as excessive, they are reasonable and apparently necessary, and especially is this true in the light of the presumption of reasonableness and necessity which the Mayson Manufacturing Company opinion and others cited say the law entitles "the action of the Board of Directors of a corporation in voting salaries for any given period."

The key employees in the case at bar were specialists, each in the particular phase of the company's business, of which he was in charge. Their combined efforts are doubtless responsible for the remarkably rapid growth of the company.

II. As to the validity of the Waiver Agreement, Counsel for the Collector says in his brief—"It is conceded that the Secretary of the Treasury never formally approved the settlement. No closing agreement under Section 3760 of the Internal Revenue Code has in fact ever been formally executed by the parties."

In Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 131, 73 L.Ed. 379, the Supreme Court said—"We think that Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised, requiring therefor the concurrence of the Commissioner and the Secretary, and prescribing the formality with which, as a matter of public concern, it should be attested in the files of the Commissioner's office; and did not intend to intrust the final settlement of such matters to the informal action of subordinate officials in the Bureau. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode."

In Joyce v. Gentsch, 6 Cir., 141 F.2d 891, 894, there was involved a waiver under Treasury Department Form 870 (the same form involved in the case at bar), which had neither been signed, approved or accepted by any one authorized by the Statute.

The Court of Appeals said—"The Waiver, on Treasury Department Form 870, with the typewritten interlineations, was not binding upon the Government and, therefore, did not bind the taxpayer. The waiver agreement was not signed, approved, or accepted by anyone authorized by the Acts of Congress to bind the Government to a tax compromise, or to a closing agreement. The statutes are specific."

It is concluded, therefore, that in order for a settlement agreement to be valid under Section 3760 or Section 3761, it must be approved; must be shown to have been entered into with the advice and consent of the Secretary of the Treasury. Under

Secretary or an Assistant Secretary of the Treasury, and failing in that, the agreement binds neither the Government nor the taxpayer.

■ The agreement in this case, lacking that essential requirement, was not binding upon the taxpayer.

III. Counsel for the Government earnestly insists, however, that the taxpayer in this case, is equitably estopped and relies upon Guggenheim v. United States, 77 F.Supp. 186, 111 Ct.Cl. 165, certiorari denied 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441, rehearing denied 336 U.S. 911, 69 S.Ct. 513, 93 L.Ed. 1075.

He insists that the force of Joyce v. Gentsch has been weakened by the denial of certiorari in the Guggenheim case.

■ I do not attach that effect to the denial of certiorari. A denial of a petition for a writ of certiorari "simply means that fewer than four members of the Court deemed it desirable to review a decision of the lower court as a matter 'of sound judicial discretion'." State of Maryland v. Baltimore Radio Show, 338 U.S. 912, 917, 70 S.Ct. 252, 254. See also Justice Frankfurter's dissenting opinion in Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587.

■ In Joyce v. Gentsch, supra, the doctrine of equitable estoppel was relied upon. The statute of limitation in that case, as in the case at bar, had tolled the right of the Government to assess additional taxes, and the Court in holding that the doctrine of estoppel had not been properly invoked said—" * * * we think that, in the circumstances of the case, preponderant weight against appellee's argument, based upon the doctrine of estoppel, will be found in the rationale of the following cases: Van Antwerp v. United States, 9 Cir., 92 F.2d 871, 875; United States v. S. F. Scott & Sons, Inc., 1 Cir., 69 F.2d 728, 732; Helvering v. Schine Chain Theatres, Inc., 2 Cir., 121 F.2d 948, 950; Hull v. Commissioner of Internal Revenue, 4 Cir., 87 F.2d 260, 262; Louis Werner Saw Mill Company v. Helvering, 68 App.D.C. 267, 96 F.2d 539, 543; Helvering v. Williams, 8 Cir., 97 F.2d 810, 812; Commissioner of Internal Revenue v. Yates, 7 Cir., 86 F.2d 748, 750."

Conclusion

I conclude, therefore, that the salaries paid to the key employees of Steiden Stores, Inc., were a reasonable and necessary expense and properly deductible as such in the years involved and that the Commissioner erroneously disallowed such deductions and that plaintiff is entitled to recover the amount paid June 27, 1945, with interest paid thereon.

Counsel for plaintiff will submit judgment in accordance with this memorandum.