## BEVERLY WALL PAPER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6683.

Circuit Court of Appeals, Third Circuit.

June 23, 1938.

Lawrence Finlayson, of Camden, N. J., for petitioner.

James W. Morris, Asst. Atty. Gen., Sewall Key, Norman D. Keller and Alexander Tucker, Sp. Assts. to Atty. Gen., all of Washington, D. C., for respondent.

Before DAVIS and BIGGS, Circuit Judges, and DICKINSON, District Judge.

DICKINSON, District Judge.

This is a deficiency tax assessment case. The taxpayer made its return following which the Commissioner gave notice of a deficiency assessment, levying an additional income and excess profits tax against the taxpayer. The latter appealed to the Board of Tax Appeals which sustained the Commissioner. The taxpayer thereupon appealed to this Court petitioning for a review. The answer to one of the questions raised and discussed disposes of all. It having been arranged that the affairs of the Corporation taxpayer should be wound up; the Corporation dissolved and its assets distributed, when it made its return the taxpayer notified the Commissioner of this and requested a prompt assessment. Under the Revenue Statute any deficiency tax which is

assessed must be assessed within one year of such request and after that none can be made. The assessment in this case was not made until more than twenty-one months after receipt of the request for a prompt assessment. The reason for this provision of the law is obvious. It is restricted to decedents' estates in the course of administration and to corporations which are to be dissolved. The reason for requiring a prompt assessment is that distribution of the assets of the estate or of the corporation is held up until the tax liability is determined. Any one upon whom rests responsibility for the distribution and who has a tax claim of the Government to have adjusted knows how real the grievance caused by the leisurely methods pursued by Governmental agencies is. The Act has been discussed as a Statute of Limitations. It is more than that. It takes away from the Commissioner all power and authority to levy a deficiency tax after the year. If none is made within the year the affairs of the decedent's estate or of the Corporation may be wound up and the assets distributed on the assurance that no tax other than that based upon the return of the taxpayer will be exacted. The provision is for the guidance of the taxpayer and more especially of those charged with the distribution of such assets and should be construed with this thought in mind. The immensity of the job imposed by law upon the tax assessor is likewise not overlooked by the Act. As he must make his assessment within the year instead of the longer time allowed him in other cases, he should have notice of the shortened time. In consequence the notice to him must be in writing and, secondly, as it relates to a tax return, he should be able to note the request for prompt assessment on that return. Hence the provision that it should be "filed after the return is made". If the request might precede the return an undue burden would be placed on the Commissioner as it would require him to make a search for such possible request in every case of a tax return. These two conditions, (1) that the request be written and (2) that it shall not precede the tax return, are the only ones imposed by the Act upon the giving of notice. It is true that the benefits of the Act do not apply to a corporation unless (1) the Commissioner is put on notice "that the corporation contemplates dissolution at or before the expiration of such year"; that "the dissolution is in good faith begun before the expiration of such year" and (2) is finally completed. This case turns solely upon compliance with the conditions of the request. There was beyond doubt a compliance with each and both of the conditions noted. The notice was in writing and it was filed after the return was made. A short chronology will make this clear. The tax was for the year 1933. The return was made January 17, 1934. On it was the notice "Final Return—Examination desired so that Company may dissolve". On April 23, 1934 the Collector notified the Commissioner that the taxpayer "desires a final examination in order that the Company may dissolve" and gave the Commissioner the serial number and enclosed the form. On June 8, 1934 the taxpayer called the attention of the Commissioner by letter that it had filed its return months before "with the request that the account be audited in order that we may wind up the affairs of this company. To date this has not been done and we will very much appreciate your giving this attention as we are anxious to make distribution of the remaining funds." On June 11, 1934, the receipt of the letter of June 8, 1934 was acknowledged and the taxpayer notified that it had been "forwarded to the Bureau for appropriate action" and the promise made "Just as soon as same has been audited you will be advised accordingly". On October 24, 1934 the taxpayer again wrote calling attention to its repeated requests that it "might have an audit of the income tax report of the (corporation) as we are anxious to wind up the affairs of this Company". On October 26, 1934, the receipt of this letter with its reference to previous letters was acknowledged and the taxpayer was advised that its tax return had been "forwarded to the revenue agent in charge * * for verification" and that "upon receipt of report from the agent, your case will be given prompt attention and you will be immediately advised". All this correspondence it will be noticed was within the year. On April 8, 1935, which it will be observed was after the year, the taxpayer was offered a hearing on the subject of a deficiency assessment and at the conferences which followed was offered the privilege of further conferences if the taxpayer would execute and return within five days "a consent extending the period of limitation for assessment". This the taxpayer refused to do whereupon on October 24, 1935, a deficiency notice was mailed to the taxpayer assessing it for additional and deficiency taxes at a sum of nearly four times the sum suggested at the conferences following April 8, 1935. The letter of notification of the deficiency

settlement is dated October 5, 1935. It was mailed as stated October 24, 1935. The fact that there was this interval may have significance in view of what followed. This letter is worth the space to insert it verbatim.

"Reference is made to the conference held in this office on June 14, 1935, with your treasurer, Mr. F. P. Jones, Jr., and additional information filed subsequent to that conference relative to your income tax liability for the calendar year 1933.

"On October 24, 1934 you requested that an early audit of your income tax return be made since you were 'anxious to wind up the affairs of this company.' Although section 275 of the Revenue Act of 1932 was not mentioned, it is believed that that was your intention; therefore, under that section of the law the statutory period of limitation for assessment of additional tax on your return would expire on October 24, 1935.

"Based upon the evidence of record your contentions cannot be conceded. If, however, you desire to discuss the matter further with this office, it is evident that your position cannot be adequately presented by you and considered by the Bureau before the expiration of the statutory period for assessment.

"You are advised that a taxpayer has the right to make written application for the execution of a consent extending the period of limitation for assessment. If you elect to avail yourself of this privilege, please forward the enclosed consent form, properly executed, to the Commissioner of Internal Revenue, Washington, D. C., for acceptance; otherwise, it will be necessary to issue at once the registered notice of deficiency required by section 272 of the Revenue Act of 1932 [26 U.S.C.A. § 272]."

We refrain from comment upon it but direct attention to the before noted fact that all the correspondence before 1935 was within the year and what is of more significance all of the notices of a request for a prompt assessment except that of October 24, 1934 were more than a year before the assessment. The assessment notice states that although the notice of October 24, 1934 contained no reference to Section 275 of the Revenue Act of 1932, 26 U.S.C.A. § 275 (the Act here in question) "it is believed that that was your intention". It is then admitted that the latest date on which the Commissioner has power and authority to levy an assessment was October 24, 1935. What

puts the Commissioner in the wrong in this appeal is that the letter of October 24, 1934, gave notice of nothing which was not in the return of January 1934 or the letters of April 1934 and June 1934. When the Commissioner admits the letter of October, 1934 gave him all the information called for by the Act of Congress, he admits that the previous notices did likewise. We cannot accept the conclusion of the Commissioner nor that of the Board of Tax Appeals that the taxpayer had not made "a proper request for a prompt assessment". We accept the definition given by the Board in previous cases that the request for a prompt assessment must be sufficient to put the Commissioner on notice. This request complied with all the statutory conditions imposed. It was in writing and it did not precede the taxpayer's return. The Commissioner himself admits that the letter of October 24, 1934 gave all the notice required. As we have said if that did the previous requests did.

The Petition for Review is allowed; the order of the Board reversed and cause remitted with direction to levy a tax against the Petitioner in accordance with the tax return made by the taxpayer.

BIGGS, Circuit Judge (dissenting).

In the case at bar the Commissioner ruled that the cost basis of certain property acquired by the petitioner in 1932 and sold by it in 1935 should be reduced by the sum of $69,699.88, and thereafter assessed a tax deficiency against the petitioner in the sum of $4,436.40.

The facts are as follows: Three corporations, constituting all of the stockholders of the petitioner, were creditors in the sum of $79,355.51 of Robert F. Hobbs, Inc., a bankrupt. The three corporations purchased the property of the bankrupt at a bankruptcy sale, paying therefor the sum of $14,955 in cash and, as additional consideration, assumed a mortgage of $38,000. It is admitted that the funds paid the receiver in bankruptcy of Hobbs, Inc., by the three corporations were paid by each in the proportion of the respective amounts of their claims to the total amount of their claims as these were allowed in the bankruptcy estate, and that the shares of the petitioner's capital stock were issued to each of the three corporations respectively in the same proportions in respect to the assets purchased. The resolution of the board of directors of the petitioner authorizing the purchase

by it of the assets of the bankrupt from the three corporations is not a part of the record. I think it is fair to assume, however, in view of the determination of the Commissioner, and in the absence of any showing or contention to the contrary, that the consideration moving from the petitioner for the acquisition of the assets in question was the equivalent of that received by the receiver from the three corporations.

In 1933 the petitioner sold the assets thus acquired by it from its three stockholders, creditors of Hobbs, Inc., and now contends that in computing its income for that taxable year it is entitled to use as a cost basis not the sum of $52,955 (the total of the cash consideration paid plus the amount of the mortgage assumed) but the sum of the claims of the three corporations' against the bankrupt plus $52,955, less the sums received by the corporations by way of dividends on their claims in the bankruptcy proceeding. The difference between these two cost bases is approximately $69,-699.88. The Commissioner adopted as the cost basis of the assets to the petitioner the sum of $52,955. The Board affirmed this ruling.

The rulings of the Commissioner and the Board in this respect were correct. The three corporations were merely the purchasers of assets sold at the bankruptcy sale of Hobbs, Inc., and the fact that they were creditors had no legal bearing upon that purchase. Their claims did not constitute a portion of the consideration paid by them and the position here taken by the petitioner that it may bring itself within the reorganization provisions of the Statute is at variance with the existing law. There is no foundation in fact for such a contention and there existed no continuity of interest whatsoever between the petitioner and the bankrupt. What occurred here was more than a mere change in identity or form. There was an outright sale of assets in accordance with the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., and an outright purchase of those assets by the three corporations. The basis for gain or loss to the petitioner upon the sale of the assets acquired by it in 1932 must be estimated as the cost of the assets to the three corporations as provided by Sections 112(b) (5) and 113(a) (8) of the Revenue Act of 1932, 26 U.S.C.A. §§ 112(b) (5) and 113 note.

It follows that if the Commissioner is not barred by any statute of limitations to assess the deficiencies in tax against the petitioner, the decision of the Board must be sustained. The petitioner contends that the statute of limitations contained in Section 275(b) of the Revenue Act of 1932, 26 U.S.C.A. § 275 (b), bars the assessment here made by the Commissioner and affirmed by the Board. The Commissioner contends that the petitioner had not complied with the conditions of Section 275(b) and that precise and "meticulous compliance" is required in order that the petitioner may avail itself of the period of limitation prescribed by the Act.

Upon January 17, 1934, the petitioner filed its return for the year 1933 and upon the face of the return appeared the following: "Final return. Examination desired so that Company may dissolve." Upon April 23, 1934, the Collector wrote to the Commissioner, enclosing the return and stating that the return was " * * * being forwarded to the Bureau promptly as the taxpayer desires a final examination in order that the Company may dissolve." On October 24, 1934, the petitioner wrote to the Commissioner stating, "Upon several previous occasions we have written the Camden office and your office asking if we might have an audit of the income tax report of the Beverly Wall Paper Company, * * * as we are anxious to wind up the affairs of this Company." Upon October 26, 1934, the Commissioner acknowledged receipt of the petitioner's letter of October 24, 1934, stating, " * * * In reply you are advised that your return was forwarded to the Internal Revenue Agent in charge, Newark, New Jersey, for verification, under date of June 28, 1934." On October 24, 1935, the Commissioner mailed a deficiency notice to the petitioner, the amount of the deficiency being stated at $4,436.40.[1]

The corporation was in actual process of dissolution at the time of the filing of its return upon January 17, 1934, and had been in process of dissolution for some time prior thereto. $33,000 by way of liquidated dividends had been paid to the stockholders prior to December 31, 1933. On February 13, 1934, another liquidating dividend of $2,000 was paid to the stockholders, and on October 5, 1935, a final liquidating dividend of $2,669.59 was paid. The dissolution of

---

[1] It should be noted that even if the petitioner's letter of October 24, 1934, to the Commissioner be deemed to be sufficient notice within the statute, none the less the assessment was made within the year.

the corporation was therefore completed upon the date last referred to.

·The Commissioner makes a number of contentions to the effect that the petitioner has not given him the notice required by the Statute. I shall deal with only one of these, but one which I think is sufficient to resolve the issue in his favor. The Commissioner contends that notice was not given him by the petitioner that it contemplated dissolution at or before the expiration of the year. The petitioner for its part urges that the use by it of the phrase "Final return. Examination desired so that Company may dissolve" upon the face of its return must have indicated to the Commissioner that there were to be no other or further returns, that if the corporation contemplated continued existence another return or other returns would be necessary and that therefore, by inference at least, the Commissioner was compelled to assume that the corporation contemplated dissolution with the year. The petitioner also takes the position that in view of the fact that the return itself showed that liquidating dividends had already been paid and that the balance of such dividends was to be paid as soon as possible, the Commissioner was put upon notice that the dissolution of the corporation was to be immediate.

I cannot accept these contentions. Subsection (1) of Section 275(b), 26 U.S.C.A. § 275(b), states that the written request of the taxpayer must notify the Commissioner that the corporation contemplates dissolution at or before the expiration of the year. By the express terms of the Statute the notice must be given to the Commissioner. Such notice cannot be aided by the contents of the return itself for the Commissioner cannot be compelled to examine taxpayers' returns to ascertain if within them are facts from which knowledge of contemplated dissolution within the year may be drawn. In my opinion the Commissioner was entitled to notice in unequivocal language of the contemplated dissolution of the corporation within the year, and not by implication or inference.

Such notice can be given to the Commissioner only by precise and meticulous compliance with the Statute. Florsheim Bros. Dry Goods Co. v. United States, 280 U.S. 453, 50 S.Ct. 215, 74 L.Ed. 542; Lucas v. Pilliod Lumber Co., 281 U.S. 245, 249, 50 S.Ct. 297, 299, 74 L.Ed. 829, 67 A.L.R. 1350; Esperson v. Commissioner, 13 B.T.A. 596, affirmed, 5 Cir., 49 F.2d 259, certiorari denied Esperson v. Burnet, 284 U.S. 658, 52 S.Ct. 36, 76 L.Ed. 558.

In the case at bar the petitioner has not met the requirements of the Statute and for this reason the period of limitation imposed by the Statute should not bar recovery by the Commissioner.

For the reasons given I think that the opinion of the Board of Tax Appeals should be affirmed and I therefore must respectfully dissent from the opinion of the majority.