**BANK OF NEW YORK and Margaret T. Seckel, as Executors of the Will of Josiah C. Thaw, Deceased, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.
May 29, 1956.

Morris & McVeigh, New York City, for plaintiffs (Francis J. Rogers, New York City, of counsel).

Paul W. Williams, U. S. Atty. for Southern Dist. of New York, New York City, for defendant (Milton E. Lacina, New York City, of counsel).

THOMAS F. MURPHY, District Judge.

This is an action by the executors of the estate of Josiah C. Thaw for a refund of an estate tax deficiency.

The decedent died March 15, 1944, and thereafter an estate tax of $420,309.17 was duly paid. After an audit of the return plaintiffs received a thirty-day letter on October 23, 1946, wherein they were advised that the Treasury was asserting a deficiency based upon, among other items, the full value of a trust created by the decedent on December 30, 1935. This amount was "included under the provisions of § 811(c) of the Internal Revenue Code" of 1939, 53 Stat. 121, 26 U.S.C.A. § 811(c). The executors thereupon filed a protest objecting *inter alia* to the inclusion of any part of this trust in the gross estate, and more particularly to the refusal to deduct the value of the life estate. Thereafter plaintiffs participated in a series of conferences with the Technical Staff. On July 11, 1947, plaintiffs, by their attorney, wrote to Mr. Kluttz of the Technical Staff proposing that the issues be compromised by including the remainder value of the trust in the gross estate. On September 26, 1947, plaintiffs signed the following waiver which was accepted by Mr. Kluttz on December 8, 1947.

"C–TS:NYD
JPM
"Offer of Waiver of Restrictions
against Immediate Assessment
and Collection of Deficiency in
Estate Tax
"Accepted Dec. 8–1947

---

"(Sgd) W. A. Kluttz

---

"Head of Division

"District of—Third New York

"Pursuant to the provisions of Section 871(d) of the Internal Revenue Code [26 U.S.C.A. § 871(d)], the undersigned Executors of the Estate of Josiah C. Thaw offer to waive the restrictions provided in Section 871(a) of the Internal Revenue Code, and consent to the assessment and collection of a deficiency in estate tax in the sum of $37,564.15, together with interest thereon as provided by law.

"It is understood that evidence of payment of estate, inheritance, legacy or succession taxes to any of the several States, Territories, or the District of Columbia, as required by Section 81.9 of Regulations 105, will be filed with the Bureau of Internal Revenue at Washington, D. C., as promptly as practicable.

"This Offer of Waiver of Restrictions is subject to acceptance by or on behalf of the Commisisoner of Internal Revenue, on the basis of the adjusted liability as hereinabove proposed, and is to take effect as such only from the date said adjusted liability is accepted by or on behalf of the Commissioner as a basis for closing the case, and if not thus accepted will have no force or effect.

"If this proposal is accepted by or on behalf of the Commissioner, the case shall not be reopened nor shall any claim for refund be filed or prosecuted respecting the taxes for the above-named estate, in the absence of fraud, malfeasance, concealment or misrepresentation of material fact, or of an important mistake in mathematical calculations, except that a claim for refund may be filed with respect to any overpayment resulting from the allowance of any credit under Section 813(b) of the Internal Revenue Code [26 U.S.C.A. § 813(b)], and the Executors also agree, upon request of the Commissioner, to execute at any time a final closing agreement as to the estate tax liability, on the foregoing basis, under the provisions of Section 3760 of the Internal Revenue Code [26 U.S.C.A. § 3760].

"Bank of New York

"By (Name indecipherable)

---

"Trust Officer

---

"Executor

"(Sgd) Margaret Thaw Morris

---

"Executor

"Date Sep 26 1947."

---

The deficiency was thereafter paid with interest.

Subsequently Congress amended § 811 (c) of the Internal Revenue Code of 1939 by § 7 of the Technical Changes Act of 1949, 63 Stat. 894. This, in short, retroactively excluded from the gross estate of decedents making transfers before October 8, 1949, expressly created reversionary interests unless they exceeded 5 per centum of the value of the property. Plaintiffs, relying upon this Act, filed a timely claim for a refund. This was denied and the present action was instituted.

The government has interposed three defenses: (1) the waiver signed by the plaintiffs is binding upon them and constitutes a bar to this action; (2) even if the waiver is not binding the plaintiffs are barred by the doctrine of equitable estoppel, and (3) even if plaintiffs are entitled to maintain this action, the deficiency was assessed on the theory that the grantor retained the right to the income from the trust and not that he retained a reversionary interest so that plaintiffs are not entitled to the benefits of the amendment.

As to the government's first defense, the binding effect of waivers not rising to the dignity of closing agreements or compromises contemplated in §§ 3760, 3761 of the Internal Revenue Code of 1939, 53 Stat. 462, 26 U.S.C.A. §§ 3760, 3761, has been the subject of considerable litigation. There now seems to be

general agreement that waivers, similar to but not identical with the one presently under consideration, do not bind either party unless they conform to the requirements of the above-cited sections of the Code, or more specifically, unless the closing agreement or compromise is made with the approval of the Secretary, Under Secretary or Assistant Secretary of the Treasury. Leach v. Nichols, 1 Cir., 1927, 23 F.2d 275; Anderson v. P. W. Madsen Inv. Co., 10 Cir., 1934, 72 F. 2d 768; Brast v. Winding Gulf Colliery Co., 4 Cir., 1938, 94 F.2d 179; Joyce v. Gentsch, 6 Cir., 1944, 141 F.2d 891; Bank of New York v. United States, 3 Cir., 1948, 170 F.2d 20; Sanders v. Commissioner, 10 Cir., 1955, 225 F.2d 629; Davidson v. United States, D.C.E.D.Wis. 1944, 58 F.Supp. 481; O'Connor v. United States, D.C.S.D.N.Y.1948, 76 F.Supp. 962; Steiden Stores, Inc., v. Glenn, D.C. W.D.Ky.1950, 94 F.Supp. 712; Cuba Railroad Co. v. United States, D.C.S.D. N.Y.1954, 124 F.Supp. 182; Cuba Railroad Co. v. United States, D.C.S.D.N.Y. 1955, 135 F.Supp. 847; Schneider v. Kelm, D.C.D.Minn.1956, 137 F.Supp. 871; Cf. L. Loewy & Son, Inc., v. Commissioner, 2 Cir., 1929, 31 F.2d 652; United States v. Lustig, 2 Cir., 1947, 163 F.2d 85. Indeed, this result is clearly required by Botany Worsted Mills v. United States, 1929, 278 U.S. 282, 49 S. Ct. 129, 131, 73 L.Ed. 379, wherein the Supreme Court said: "Independently of these concessions, we are of the opinion that the informal settlement made in this case did not constitute a binding agreement. Section 3229 authorizes the Commissioner of Internal Revenue to compromise tax claims before suit, with the advice and consent of the Secretary of the Treasury, and requires that an opinion of the Solicitor of Internal Revenue setting forth the compromise be filed in the Commissioner's office. Here the attempted settlement was made by subordinate officials in the Bureau of Internal Revenue. And although it may have been ratified by the Commissioner in making the additional assessment based thereon, it does not appear that it was assented to by the Secretary, or that the opinion of the Solicitor was filed in the Commissioner's office.

"We think that Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised, requiring therefor the concurrence of the Commissioner and the Secretary, and prescribing the formality with which, as a matter of public concern, it should be attested in the files of the Commissioner's office; and did not intend to intrust the final settlement of such matters to the informal action of subordinate officials in the Bureau. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode. Raleigh, etc., R. R. Co. v. Reid, 13 Wall. 269, 270, 20 L.Ed. 570; Scott v. Ford, 52 Or. 288, 296, 97 P. 99.

"It is plain that no compromise is authorized by this statute which is not assented to by the Secretary of the Treasury. Leach v. Nichols, 1 Cir., 23 F.2d 275, 277. For this reason, if for no other, the informal agreement made in this case did not constitute a settlement which in itself was binding upon the Government or the Mills."

█ Applying this language, inasmuch as there is nothing to indicate that any of the persons specified by the statute ever approved the instant compromise, the waiver in and of itself is not a bar to the prosecution of this suit.

█ As to the second defense, whether or not the facts of this case give rise to the doctrine of equitable estoppel is a somewhat more difficult question. The Supreme Court expressly left the matter open in the Botany Mills case. The answer should probably be in the negative since the government may always assert a deficiency by way of recoupment when sued for a refund, even though an independent suit for the amount of the deficiency would be barred by the statute of limitations. Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; Helvering v. Schine Chain Theatres, 2 Cir., 1941, 121 F.2d 948; Joyce

v. Gentsch, supra; Bank of New York v. United States, supra; Hamil v. Fahs, D.C.S.D.Fla.1955, 129 F.Supp. 837. But see, also, Guggenheim v. United States, 1948, 77 F.Supp. 186, 111 Ct.Cl. 165, and Schneider v. Kelm, supra, to the contrary. The mere fact that the government has not chosen to bring an action for recoupment in this suit should not prejudice the taxpayers in their claim for a refund. However, we need not decide the matter since § 7(c) of the Technical Changes Act of 1949, 63 Stat. 896, 26 U.S.C.A. § 811 note, makes it clear that no law or rule of law (and that would include the doctrine of equitable estoppel) except §§ 3760, 3761, bars the refund. This leaves little doubt that Congress intended to afford the broadest relief to the taxpayer. Nor is there any doubt that whatever it was that plaintiffs signed it was not a document specified in either of those sections. And what is more, the government realized it for it secured the promise of the plaintiffs to execute a § 3760 agreement at any time it requested them to.

For these reasons, plaintiffs are entitled to maintain their action.

■ As to the third defense the only remaining question is upon what theory was the trust included in the gross estate. By the terms of the trust the income was payable to the grantor's wife for life and upon her death the corpus was payable to the grantor's daughter if living, and if not to her surviving issue. If none of these survived the corpus was payable to the grantor, if living. In default of all the foregoing certain other provisions, not here material, were made. No part of the trust was included in the original estate tax return. The government in the Preliminary Statement of Tax Liability attached to the thirty-day letter proposed to include the trust at its full value of $155,269.83 pursuant to § 811(c). The taxpayers in their protest objected to the inclusion of any part of the trust, and particularly to the refusal to deduct the value of the life estate. In their offer of compromise plaintiffs suggested that only the value of the remainder be included. This suggestion was accepted by the Treasury. Its audit report, of the same date as the "waiver", includes the trust at the remainder value of $100,633.48 computed as follows:

"The remainder value of the trust created by decedent under date of December 30, 1935 for the benefit of Mary Harrington Thaw, has been computed as follows:

| | |
|---|---|
| Value of trust | $155,269.83 |
| Factor for *reversion* or present value of $1.00 due at the end of the year of death of a person aged 64 | .64812 |
| .64812 x 155,269.83 | $100,633.48" |

Use of the remainder value indicates that the theory of taxation was predicated upon Klein v. United States, 1931, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996; Helvering v. Hallock, 1940, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604; Fidelity-Philadelphia Trust Co. v. Rothensies, 1945, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 782 and Commissioner of Internal Revenue v. Field's Estate, 1945, 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 786 and that portion of § 811(c) relating to interests intended to take effect in possession or enjoyment at or after death. Under this theory only the value of the remainder is includable in the gross estate. It was only after the plaintiffs claimed a refund that the defendant belatedly indicated that the tax was based upon that portion of § 811(c) referring to the retention of the income from the trust, relying upon Helvering v. Mercantile-Commerce Bank & Trust Co., 8 Cir., 1940, 111 F.2d 224, certiorari denied 1940, 310 U.S. 654, 60 S.Ct. 1104, 84 L. Ed. 1418; Cole's Estate v. Commissioner, 8 Cir., 1944, 140 F.2d 636, and Hooper, Administratrix v. Commissioner, 1940, 41 B.T.A. 114. Under this theory the entire value of the trust would have been includable in the gross estate.

Therefore, I find it to be a fact that the trust was included in the gross estate by reason of the grantor's having

retained a reversionary interest in the trust corpus. The plaintiffs have brought themselves within the relief provisions of § 7 of the Technical Changes Act of 1949 by offering uncontradicted evidence that the value of the reversionary interest was less than 5 per centum of the total value of the trust. Plaintiffs are therefore entitled to the refund.

Judgment accordingly.