**J. W. CAIN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 15854.**

United States Court of Appeals
Eighth Circuit.

April 29, 1958.

L. E. Keeney, Texarkana, Tex., for appellant.

David O. Walter, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., and Charles W. Atkinson, U. S. Atty., Fort Smith, Ark., with him on the brief), for appellee.

Before SANBORN, JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

JOHNSEN, Circuit Judge.

Appellant sued in the District Court for recovery of alleged overassessments in his income taxes for the years 1942 and 1943. The Court gave summary judgment for the Government, on the ground that the admitted facts estopped appellant from asserting the existence of overassessments in the situation.

The overassessments were related to the income of a family partnership, comprised of appellant, his father, and their wives, whose reality the Commissioner had refused to recognize. Upon audit of appellant's 1942 and 1943 returns, deficiencies were accordingly determined and assessed against him—for 1942, on all of the partnership income, instead of a one-fourth share as reported by him; and for 1943, on a one-half, instead of a one-fourth, share of such income. As to 1943, the Commissioner had granted recognition to the father as having been a partner with appellant, but he refused to recognize a partnership status in the wives for either year.

Appellant had thereafter paid the deficiencies so imposed upon him, on an instalment basis, extending into the year 1947. In 1948, within a year of his completion of the payments, he filed a claim with the Commissioner for refund. It was upon this claim that he predicated his right to maintain the present action, instituted by him in 1955, under allegation in the complaint that the Commissioner had never taken any action on the claim.

The estoppel which the Court viewed as existing rested on the legal significance and equitable consequence of the incidents following, the facts of which were admitted.

The four partners had continued, for the years 1944 and 1945, to make returns and pay taxes on the basis of each having a right to a one-fourth share of the partnership income. On audit of these returns, made in 1948, the Internal Revenue Agent in Charge took the same position on the partnership question as had been adopted for the years 1942 and 1943, and indicated his intention to recommend deficiencies and adjustments on this basis.

The partners protested against any such action, and requested opportunity for hearing and conference with the Division's Technical Staff. They desired to have the partnership question gone over again, not as to the years 1944 and 1945 alone, but for 1942 and 1943 as well. It apparently was their hope that some solution could be arrived at for the question generally. To facilitate such a consideration, they executed waivers for all of the four years, extending the time in which the Commissioner would be able to make assessment of any additional taxes as to the situation, to June 30, 1950. In all this, and in the further events detailed below, the partners were acting through experienced counsel.

A Technical Advisor from the Division's Staff granted them a conference and hearing, in an attempt to effect a disposition of the matter. The attorney

thereafter submitted several proposals of settlement for the Staff's consideration. The situation continued in this negotiative stage until June 3, 1949, when the Head of the Technical Staff sent a letter to the attorney, outlining a basis of adjustment which would be acceptable to him, and which he was prepared to recommend, provided the terms were also satisfactory to the partners, and provided they made submission thereof to him as "a proposal for settlement" originating from them. One of the things which he indicated that they would have to agree to do was to allow such overpayments, as the settlement adjustment would cause to exist in favor of any of them, to be offset "against the deficiencies of the others as required to effect the aggregate adjustment".

Settlement of the partnership question itself was made on the basis of allowing appellant's father to be recognized as a partner with him for the year 1942, as had been previously done for the year 1943; of according recognition to appellant, his father, and the father's wife (appellant's stepmother)—but not to appellant's wife—as having constituted members of the partnership for the years 1944 and 1945, on the basis of a 45%, 45%, and 10% interest, respectively; and of granting a salary allowance to appellant's wife, for 1944 and 1945, of $1200 annually.

Proposals to settle and adjust the tax liability of all the parties for the four years on this related basis were formally submitted by them on June 15, 1949. On July 13, 1949, the Head of the Technical Staff notified each of them in writing that "The proposal submitted by you has been accepted on behalf of the Commissioner", and "The case will be closed on the foregoing basis".

The Head of the Technical Staff made adjustment of the tax liability of all of the parties on the basis of the authorization contained in their proposals of settlement, which resulted collectively in the creation of overpayments as to appellant, his wife, and his stepmother, and a deficiency as to his father. Pursuant to the consent given by all of them in their proposals, the overpayments as to the three parties were applied to the deficiency of the father, except that there existed an excess beyond the father's deficiency, which it had been agreed should be, and which was, refunded to appellant.

The situation stood thus, seemingly disposed of and closed, until 1955, when appellant instituted this action. While the acceptance of the proposals of settlement expressed by the Head of the Technical Staff on behalf of the Commissioner had never been submitted to and approved by the Secretary of the Treasury, or the Under Secretary, or an Assistant Secretary, as required by § 3760(b) of the Int.Rev.Code of 1939, 26 U.S.C.A. § 3760(b), to give it legal finality at the time against the Government, the adjustment nevertheless was for administrative purposes recognized and honored by the Internal Revenue Department, in that the statute of limitations, 26 U.S.C.A. §§ 275(a, c), 276(b) and 3746(b), was permitted to run against the Government's right to reopen the situation as to any of the parties. The Commissioner's right to have claimed and assessed additional deficiences expired on June 30, 1950.

Appellant had additionally seen fit to allow the situation to lie passive and unalerted in any respect, until the statute of limitations had also run against the right which the other three would equally have had to escape the effect of the aggregate adjustment, if appellant succeeded in forcing recognition of the partnership on a different basis than under the settlement terms.

Only the fact that appellant had put a claim for refund on file, before the settlements were undertaken to be negotiated, and his allegation, if a fact, that the Commissioner had failed to take any action thereon, provided any possible handhold at the time the suit was instituted for an attempt to reopen the situation. And that attempt could be capable, at most, of making reach against, not all four, but merely two, of the years which had been involved in the aggregate adjustment, since his antecedently filed claim had had

application only to his 1942 and 1943 taxes. Thus, he could not and did not at all seek to touch the effect of that part of the adjustment which related to his 1944 and 1945 tax liability. Each of these constituted, of course, a separate tax year, but underlying the adjustments agreed upon as to them were involved recognitions which had been made interdependently, for effecting disposition of the partnership controversy in its whole.

Appellant's primary contention for reversal is that the proposals of settlement made by the partners, and the purported acceptance thereof by the Head of the Technical Staff, were without any actual legal effect, in that the transaction was not subjected to the procedure and formality necessary under § 3760 or § 3761 of the 1939 Code, to cause a closing agreement or a compromise to become final against the Government; and that they therefore were incapable of giving rise to any estoppel whatsoever.

A second contention is made that, if such a proposal of settlement and purported acceptance thereof, not in compliance with § 3760 or § 3761, could be capable otherwise, under some circumstances, of having an effect by way of estoppel, no such recognition would be possible in a situation where as here, there had been a direct use of a regular Treasury Waiver Form, with its protective recitations and conditions.

The proposal of settlement submitted by appellant, beyond the precedent letters of the attorney and of the Head of the Technical Staff explanatory of its underlying basis, consisted of a statement of the tax effects upon appellant, for the years involved, of the aggregate adjustment being made, with a recognition of liability and willingness to pay on this basis—all of which was set out by inserted statements upon a Treasury Form 874. The Form itself contained general, printed recitations on it, such as that it did not constitute "a final closing agreement under section 3760 of the Internal Revenue Code, and does not, therefore, preclude the assertion of a further deficiency in the manner provided by law should it

subsequently be determined that additional tax is due"; that the agreement was "subject to acceptance by or on behalf of the Commissioner on the basis of the adjusted liability as herein proposed, and if not thus accepted will have no force and effect"; and that the taxpayer was agreeing "upon request of the Commissioner to execute at any time a final agreement as to the tax liability, on the foregoing basis, for the said years under the provisions of section 3760 of the Internal Revenue Code".

On appellant's second contention, referred to above, we are unable to see how the presence or absence of the recitations and conditions of Treasury Form 874, referred to, would be capable of making any difference as to the question involved. If §§ 3760 and 3761 of the Code, where not complied with, themselves preclude any estoppel from arising in a settlement situation, they necessarily do so without regard to whether their provisions or effects have been repeated in the proposal of settlement. Failure to mention the sections or to set out the effect of their provisions in a proposal of settlement would therefore no more afford a basis for escaping them than would an attempt to declare in the proposal that it was intended that they should have no application to the adjustment being agreed upon.

Hence any distinction made, for purposes of a question of estoppel, such as is here involved, between whether a proposal of settlement, through use of a Treasury Waiver Form, or otherwise, contains a recitation that it is not in itself "a final closing agreement" and is not intended to preclude the assertion of a further deficiency by the Government if the right thereto exists, or whether the proposal is without such recitations—which distinction seems to have been accorded significance in Daugette v. Patterson, 5 Cir., 250 F.2d 753, 756, and in some District Court cases on the question—is in our opinion without validity.

The controlling question accordingly is whether it is impossible at all, in view of §§ 3760 and 3761, for any estoppel to

come to exist against the assertion of overassessment and the claiming of refund by a taxpayer as to the settlement made, or whether such an estoppel may properly be recognized, (1) where there has been a running of the statute of limitations against the Government, so that § 3760 and 3761 can no longer have any revenue significance in the situation; or (2) where there has been not only such a running of the statute, but also elements of possible inequitable consequence to third parties, involved in the settlement, unless an estoppel is recognized.

Before approaching that question, and to leave the pathway unclouded, it may be stated that we think it indisputable that the fact that the statute of limitations has run against the Government, but not the taxpayer, affords no basis for estoppel against a taxpayer's right to seek recovery of any overpayment from error made by him in his filed return, or of any overassessment from ordinary deficiency determination engaged in by the Commissioner. These are arms-length matters of natural administrative situation, so that no inequity can be recognized as inhering in the fact alone in such a situation that the Government has allowed its right to assess further deficiencies to expire.

■ The limitation rights of the Commissioner and of a taxpayer are in no way geared to each other, so as to leave them with any interdependence. With the power of the Commissioner to assess additional deficiencies, and the right of a taxpayer to seek refund of any improper determinations made against him, thus having no legal complementariness, there can be no basis for any equitable concern by a court as to the consequences between them of the fact as such that the statute of limitations has run against the one or the other.

■ But this does not reach or provide answer to the present situation. The refund sought is not of a payment made by the taxpayer on the basis of his filed return or of one that stands here as an ordinary deficiency determination engaged in by the Commissioner. It involves, as has been indicated, a payment made, whose source and amount have sprung from a proposal of settlement submitted by the taxpayer, after negotiation and concession among the parties, and an approval thereof by the Head of the Technical Staff, with indicative notice to the taxpayer that the offer was being accepted and that the case was being closed on this basis, and with the Government thereafter relyingly allowing what had been thus done to acquire legal finality against it, through a running of the statute of limitations against its right to reopen the facts and questions underlying the agreement reached.

Also, the adjustment which appellant seeks to escape is one that had been complementarily made, in that it covered and was intended to dispose interdependently of the tax liability of all four parties as to the partnership income, and not just that of appellant alone. Beyond this, if appellant were to succeed in his refund attempt, the collateral effect thereof would be that there had existed additional tax liabilities against the three other partners, as to which the Government had allowed its right of assessment and collection to terminate, on the assumption that all the parties had treated the situation as closed. For example, as to his father's situation, appellant was seeking to get back the amount of his 1942 overassessment under the settlement agreement which had been applied pursuant to the agreement upon his father's deficiency.

Again, appellant was making attack upon the aggregate adjustment in relation to only two of the four years covered by the settlement. He thus was legally accepting the benefit for the years 1944 and 1945 of the concession made by the Head of the Technical Staff to get the controversy ended, of recognizing his stepmother as well as his father as partners for that period.

The question presented by these various aspects does not seem to have been directly passed upon by the Supreme Court. In the case of Botany Worsted Mills v. United States, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379, where there had been an agreement of settle-·

ment as to the taxes sought to be recovered, but the question of the effect of the running of the statute of limitations against the Government's right to reopen and make additional assessments was not indicated as having been involved, the Court reserved generally the question of "whether such an agreement, though not binding in itself, may when executed become, under some circumstances, binding on the parties by estoppel". In Daugette v. Patterson, 5 Cir., 250 F.2d 753, referred to above, where recognition was given to such an estoppel, the Supreme Court denied certiorari, 78 S.Ct. 561.

In Schneider v. Kelm, 8 Cir., 237 F.2d 721, 727, we found it unnecessary to reach the question of estoppel raised by the Government and sustained by the trial court, in relation to a tax-settlement situation. The trial court had in that case expressly held, D.C., 137 F.Supp. 871, 875-876, as follows: "As to 1946, however, the bargain had become binding, for the Commissioner had allowed the statute to run in his belief that the controversy as to that year had been closed. Therefore, merits of the controversy aside, plaintiffs should be estopped from prosecuting their action, in so far as it is based on their claims for refund for the year 1946".

The same view had also been taken by the Court of Claims in Guggenheim v. United States, 77 F.Supp. 186, 196, 11 Ct.Cl. 163, certiorari denied 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441, where the decision was predicated on this sole ground, the Court saying: "At the time the agreement in this case was executed the statute had not run on the collection of further deficiencies, but when the claims for refund were filed the statute had run. It would obviously be inequitable to allow the plaintiff to renounce the agreement when the Commissioner cannot be placed in the same position he was when the agreement was executed. A clear case for the application of the doctrine of equitable estoppel exists and should be applied".

There are a number of other equally clear-cut decisions by District Courts to the same effect, which need not here be given compounding citation—except that Girard v. Gill, 4 Cir., 243 F.2d 166 may be noted. Accepted text authority also has recognized the applicability and soundness of the principle. Thus, 9 Mertens Law of Federal Income Taxation, § 52.20, declares: "Where a taxpayer receives and retains the benefits flowing to it from a compromise of its tax liability, the taxpayer, after the statutory period for the collection of the tax has expired, is estopped from repudiating such part thereof as it contends to have been less favorable to it than the facts or the law warranted".

But it is argued by appellant that this fails to accord to §§ 3760 and 3761 the plenary significance which Congress must have intended them to have, as a protection to the Government's revenues. The sections are, however, not capable of serving as such a bulwark, except in situations where the statute of limitations has not run on the Government's right to take further tax action. We can see no reason or basis to import into them an intent or policy beyond the limits of such protection as they are legally capable of affording.

Thus, we believe that no conflict or violation of them can be claimed, in allowing the statute of limitations, on general legal ground, to put a seal of finality on a tax settlement, which, except for §§ 3760 and 3761, would have been binding at the time that it was made; which the parties have seen fit to honor in practice by a performance of it; and of which neither has made any repudiation during the period of the running of the statute of limitations against the Government.

In relation to this allowing of a running of the statute against the Government to amount to acceptance of a settlement by operation of law, or to create an estoppel against the taxpayer by reason of the inability of the Commissioner to be restored to the same position he occupied when the agreement was executed, it may collaterally be noted that the limitations against the Commissioner as to making assessments, different than as to statute of limitations in general, have been held to go to the existence of the

power and not to the matter of using a remedy. Beverly Wall Paper v. Commissioner, 3 Cir., 98 F.2d 211, 212.

■■ As we have indicated, we think it is sufficient to preclude a taxpayer from claiming refund, in relation to an executed settlement agreement, that the statute of limitations has run against the right of the Commissioner to deal with the situation further. There are, however, also elements of conventional equitable estoppel in the present situation which go beyond this. Appellant's attempt to escape the executed settlement agreement would further have the effect of upsetting legally the tax status of the three other partners, as given recognition by everyone under the aggregate adjustment entered into. For example, as has been pointed out, appellant was seeking to have restored to him the amount of a tax credit which had been allowed in favor of his father. And he was undertaking to have established a partnership basis different than what the other three had accepted and allowed to become final among them, from their permitting the statute of limitations to expire against their taking any other position.

True, the result of this economically could perhaps not be to subject any of them to additional, enforced tax payments, since the Commissioner's power so to do had expired. Nevertheless, the three other partners might be touched by a sense of moral obligation, for which the settlement agreement had left them no basis to be subjected. But in any event, without regard to its economic consequence to them, appellant's attempt, if successful, would constitute an upsetting legally of the partnership status for tax purposes recognized by the settlement agreement. At the same time, the Commissioner would be left without any means of dealing with that upset situation, both as to the Government's revenue rights and as to redress among the parties in the adjustments made.

We think that the grounds discussed, separately as well as collectively, required the summary judgment which the trial court entered. To have escaped this effect, appellant at the least should have taken some step to repudiate the settlement agreement before the statute of limitations had run against the Government and against the other parties.

Affirmed.

VAN OOSTERHOUT, Circuit Judge (dissenting).

The only conclusive evidence in the record to support the summary judgment against the taxpayer, entered upon the basis of estoppel, is that the taxpayer, after negotiations with the Technical Staff, which resulted in an adjustment of an asserted deficiency, signed the waiver form, and the further fact that the statute of limitations had run against the right of the Government to assert a deficiency at the time the taxpayer commenced his refund suit. I cannot accept the view that such facts, standing alone, are sufficient as a matter of law to create an estoppel against the taxpayer.

The Government does not contend that the informal agreement with the taxpayer was approved by the Secretary in the manner required by section 3760 or 3761 of the Internal Revenue Code of 1939. The Supreme Court has clearly held that an agreement not approved by the Secretary is of no validity and is binding upon neither the Government nor the taxpayer. Botany Worsted Mills v. United States, 280 U.S. 282, 49 S.Ct. 129, 73 L. Ed. 379. The Court there states (280 U. S. at pages 288–289, 49 S.Ct. at page 131):

"We think that Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised, requiring therefor the concurrence of the Commissioner and the Secretary, and prescribing the formality with which, as a matter of public concern, it should be attested in the files of the Commissioner's office; and did not intend to intrust the final settlement of such matters to the informal action of subordinate officials in the Bureau. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode. Raleigh & G. Railroad

Co. v. Reid, 13 Wall. 269, 270, 20 L. Ed. 570; Scott v. Ford, 52 Or. 288, 296, 97 P. 99.

"It is plain that no compromise is authorized by this statute which is not assented to by the Secretary of the Treasury. Leach v. Nichols, 1 Cir., 23 F.2d 275, 277. For this reason, if for no other, the informal agreement made in this case did not constitute a settlement which in itself was binding upon the Government or the Mills. * * *"

It is noted that the estoppel issue was raised in the Botany Mills case. The facts are not fully set out in the opinion, but it is disclosed that the tax involved was that for 1917, due in 1918, and that the refund suit was commenced in September 1924. Thus, it is not unlikely that the statute of limitations had run against the Government when the suit was brought. The Court disposes of the estoppel issue summarily with the following language (280 U.S. at page 289, 49 S.Ct. at page 132):

"* * * And, without determining whether such an agreement, though not binding in itself, may when executed become, under some circumstances, binding on the parties by estoppel, it suffices to say that here the findings disclose no adequate ground for any claim of estoppel by the United States."

In Daugette v. Patterson, 5 Cir., 250 F.2d 753, 757, decided December 26, 1957, a case involving the same basic issue as now before us, Judge Rives, in his dissenting opinion, aptly states:

"The holding in this case is, I think, contrary to the legislative policy that there can be no compromise of a tax claim by the Commissioner of Internal Revenue unless assented to by the Secretary of the Treasury. Sections 3760 and 3761, Internal Revenue Code of 1939, 26 U.S.C.A. §§ 3760, 3761; Sections 7121 and 7122 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 7121, 7122; Botany Mills v. United States, 278 U.S. 282, 289, 49 S.Ct. 129, 73 L.Ed.

379. The Commissioner or his representative should not be permitted by indirection to usurp the functions which Congress has vested in the Secretary or his delegate. To allow that to be accomplished, first by tacit compliance of the parties with an agreement of compromise not approved by the Secretary and then by the device or theory that the taxpayer is estopped to deny the compromise or to file or prosecute a claim for refund contrary to his promise which had not been accepted by the Secretary, and hence was not legally binding, seems to me wholly impermissible."

A substantial majority of the courts considering the issue now before us have held that the execution of a waiver, such as here used, and the running of the statute of limitations against the Government's right to assert a deficiency, do not estop the taxpayer from prosecuting a claim for refund. Among such cases are: Bennett v. United States, 7 Cir., 231 F.2d 465; Bank of New York v. United States, 3 Cir., 170 F.2d 20; Joyce v. Gentsch, 6 Cir., 141 F.2d 891; Bank of New York v. United States, D.C.S.D.N.Y., 141 F.Supp. 364; Hamil v. Fahs, D.C.S.D.Fla., 129 F. Supp. 837; Steinden Stores, Inc., v. Glenn, D.C.W.D.Ky., 94 F.Supp. 712; O'Connor v. United States, D.C.S.D.N.Y., 76 F.Supp. 962. See also Annotation, 11 A.L.R.2d 903, 912.

I believe that the reasoning upon which the foregoing decisions are based is sound. As stated in the Joyce case, 141 F.2d at page 895, the waiver agreement was "entirely lacking in essential mutuality."

Daugette v. Patterson and Guggenheim v. United States, 77 F.Supp. 186, 111 Ct. Cl. 163, relied upon by the majority, both distinguish the Joyce case upon the basis of difference in the factual situation in that the waiver form did not contain a clause reserving to the Government the right to assert a further deficiency such as appears in the Joyce waiver form. I do not attach any importance to this distinction, because the reservation gives the Government no rights relative to as-

serting a deficiency which it did not already possess by reason of the Botany Mills decision. In our present case the waiver contains a reservation similar to that in the Joyce case. To the extent that the Guggenheim and Daugette cases rely upon the difference in form of waiver, they are no authority for an estoppel under the facts in our present case.

The judgment complained of was entered upon motions for summary judgment. With respect to such motions, this court, in Northwestern Auto Parts Co. v. Chicago, Burlington & Quincy R. Co., 240 F.2d 743, 746, said:

"*  *  * a summary judgment upon motion therefor by a defendant should never be entered except where the defendant is entitled to its allowance beyond all doubt; only where the conceded facts show defendant's right with such clarity as to leave no room for controversy; with all reasonable doubts touching the existence of a genuine issue as to a material fact resolved against the movant; giving the benefit of all reasonable inferences that may reasonably be drawn from the evidence to the party moved against. *  *"

The burden of proof is upon a party asserting estoppel to prove the existence of the essential elements of estoppel. Ross v. Commissioner, 1 Cir., 169 F.2d 483, 496, 7 A.L.R.2d 719; Crossett Lumber Co. v. United States, 8 Cir., 87 F.2d 930, 931, 109 A.L.R. 1348. The essential elements of estoppel are thus stated in Van Antwerp v. United States, 9 Cir., 92 F.2d 871, 875:

"To constitute estoppel (1) there must be false representation or wrongful misleading silence. (2) The error must originate in a statement of fact and not in an opinion or a statement of law. (3) The person claiming the benefits of estoppel must be ignorant of the true facts, and (4) be adversely affected by the acts or statements of the person against whom an estoppel is claimed."

See also 19 Am.Jur. Estoppel, § 42; Vol. 10A, Merten's Law of Federal Income Taxation, § 60.02.

I am convinced that the Government has failed to establish the existence of the essential elements of estoppel with sufficient certainty to justify a summary judgment. I am unable to find support in the record for a conclusion that the taxpayer has been guilty of any false representation or misleading silence, upon which the Government had any right to rely. It seems clear that the Government was chargeable with knowledge that as a matter of law the waiver was binding upon no one. Hence, how can it be said that the Government was justified in relying upon it? The Government knew at the time of the signing of the waiver that the taxpayer had already filed a refund claim. The Government's defense that it rejected the refund claim and gave proper notice thereof, and that the claim for refund is barred by the statute of limitations, is not before us on this appeal.

Another essential element of estoppel is detriment to the promisee. The record does not establish, beyond factual dispute, that the Government will suffer any loss of taxes justly due it. There has as yet been no adjudication as to the membership and validity of the alleged family partnership. If upon trial it is determined, as contended by the Government, that the taxpayer was chargeable with one-half of the income for the partnership for 1942 and 1943, the taxpayer would be entitled to no refund, as he would not then have established that he had overpaid his tax. If, on the other hand, the determination should be that the taxpayer and his wife each owned a one-fourth interest in the partnership, it is still far from certain that the Government would sustain any loss. The claim for refund involves only the years 1942 and 1943. Taxpayer claims that he and his wife each owned one-fourth interest in the partnership. The Government claims taxpayer owns a one-half interest. Taxpayer and his wife each paid tax upon one-fourth of the partnership income. The Government took steps to as-

sess the taxpayer with one-half the partnership income. Such additional tax assessed was paid and, in connection therewith, the overassessment of $10,008.82 against the wife, occasioned by the determination that she was not a partner, was credited to the deficiency due from the taxpayer.

Taxpayer concedes that his claim should be reduced by the above $10,008.82 and by the net amount of the Dorothy Cain overassessment above the W. A. Cain deficiency applied to the taxpayer's deficiency ($901.33), and by the amount of the overassessment refunded him in 1949 ($6,886.74).

J. W. Cain, W. A. Cain, and their respective wives consistently filed tax reports in which each reported one-fourth of the partnership income and paid tax thereon. When the Government insisted on reallocating the income to the husbands, the wives' overassessments were generally applied against the tax deficiencies of the husbands. No readjustment of taxes subsequent to 1943 is directly involved in the refund suit. The claim upon which this suit is based was filed in 1948, prior to the 1949 tax adjustments.

The majority states that appellant is seeking to recover the amount of his 1942 overassessment which, with his consent, was applied upon his father's deficiency created by charging his father with one-half of the 1942 partnership income. As I read the record appellant makes no such claim. The majority does not point to any evidence which definitely establishes that the Government will, as a result of this suit, lose any taxes to which it is lawfully entitled from the members of the alleged partnership, or to any facts that establish any of the members of the alleged partnership will suffer any prejudice.

As pointed out in the Joyce case, supra, 141 F.2d at pages 895–896, the Government may have a defense of equitable recoupment against the taxpayer's claim. Such a defense is not barred as long as the main action is timely. Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421.

It should be noted that on June 27, 1949, a date subsequent to the 1949 purported settlement, the Supreme Court decided Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, which case, together with other cases subsequently decided, has an important bearing upon the validity of family partnerships for tax purposes.

The Government has, in addition to the estoppel defense, asserted other defenses which may have considerable merit. Since I am of the opinion that the Government has not, in any event, established an estoppel against the taxpayer with the degree of certainty required to entitle it to a summary judgment, I would reverse the judgment and remand the case to the trial court for trial upon all issues, including the estoppel issue.