# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3799

_____

| | | |
|---|---|---|
| JAMES IHNEN; LISA IHNEN, | * | |
| | * | |
| Plaintiffs-Appellants, | * | On Appeal from the United |
| | * | States District Court for the |
| v. | * | District of South Dakota. |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: October 16, 2001
Filed:  November 27, 2001

_____

Before BYE, BRIGHT, and RICHARD S. ARNOLD, Circuit Judges.

_____

BRIGHT, Circuit Judge.

In August 1995, appellants James and Lisa Ihnen reached an informal agreement with the Internal Revenue Service (IRS), resolving their federal income tax liabilities for the years 1986 to 1991.  In September 1998, the Ihnens filed administrative refund claims for the taxes, penalties, and interest assessed under the agreement, alleging that the IRS had erroneously determined their tax liabilities for 1986-91.  The Ihnens filed these claims more than three years after the agreement had been executed and after the statute of limitations had expired.  Thus the IRS could not assert any claim for increased taxes and penalties which might have been owed absent a settlement.  The IRS rejected the Ihnens' refund claims and the Ihnens brought suit

for refund of allegedly overpaid taxes. The district court[1] granted the government's motion for summary judgment dismissing the claims, concluding that, under <u>Cain v. United States</u>, 255 F.2d 193 (8th Cir. 1958), the Ihnens are now estopped from seeking a refund. We affirm.

## I. Background

During the years in question, the Ihnens owned and operated the Tea Steakhouse, in Tea, South Dakota. The IRS audited the Ihnens' federal income tax returns and determined that the Ihnens had underreported their income for the years 1986-91. The IRS proposed assessing additional taxes in the amount of $200,995 for those years, along with penalties totaling $177,207. The Ihnens disputed the proposed assessments.

After receiving correspondence from an IRS Appeals Officer, Steven Onken, the Ihnens agreed to pay a reduced amount proposed for settlement by the IRS. The attorney for the Ihnens, Russell Kading, wrote to Onken on July 13, 1995, that the Ihnens agreed to the government's proposal and that "[t]his agreement is made *with the specific understanding* that this in no way prevents or precludes my clients from making an offer in compromise to the [IRS] of whatever the actual tax liability in this matter computes out to be." Jt. App. at 66 (emphasis in original).

Later that month the Ihnens executed, through Kading, a Form 870-AD settlement agreement. The form stated that the Ihnens "consent[ed] to the assessment and collection of the following deficiencies and additions to tax" for the years 1986-

---

[1]The Honorable Lawrence L. Piersol, Chief Judge, United States District Court for the District of South Dakota.

91: $148,288 in taxes and $36,377 in penalties.[2] The Ihnens agreed to pay these sums, along with fifty percent of the interest due on the taxes assessed for 1986 and 1987. They also agreed to neither file nor prosecute any "claim for refund or credit . . . for the years stated on this form, other than for amounts attributed to carrybacks provided by law." The Commissioner agreed both to accept the tax liability as adjusted and not to reopen the case in the absence of fraud, malfeasance, misrepresentation, concealment, or important mathematical error. In the settlement the IRS waived fraud penalties and conceded a reduction of $52,707 in taxes. The Ihnens began to pay the government the money owed under the agreement.

The IRS subsequently audited the Ihnens' 1994 and 1995 tax returns and again proposed assessing additional taxes. The Ihnens, with different counsel, successfully challenged the assessments, and the IRS accepted their returns as filed. The Ihnens state that this successful challenge led them to seek a re-evaluation of the 1986-91 assessments on grounds that the IRS had used the same allegedly erroneous tax determination method for those years as it had for 1994-95. In September 1998, the Ihnens filed claims for refund of the taxes assessed under the 870-AD agreement. The IRS disallowed the refund claims.

The Ihnens timely filed a complaint in district court, seeking the claimed refunds. The government filed an answer. As a defense, the government asserted that the Ihnens were estopped from pursuing their refund claims by the 870-AD agreement because the statute of limitations had run against the IRS's ability to assess additional taxes and penalties relating to the years covered by the agreement.

---

[2]The Ihnens allege and state by affidavit that they did not believe their original tax returns for 1986-91 understated their income, and that they agreed to the assessment contained in the Form 870-AD agreement because they were advised by counsel that failure to accept the settlement would lead to criminal prosecution and incarceration.

The government moved for summary judgment on the basis of its estoppel defense. The district court granted the motion, concluding that <u>Cain</u> precluded the Ihnens from seeking a refund on taxes for which they had executed a settlement agreement and on which the statute of limitations had run against the IRS.

## II. Discussion

We review grants of summary judgment <u>de novo</u>, applying the same standards as the district court. <u>Dulany v. Carnahan</u>, 132 F.3d 1234, 1237 (8th Cir. 1997). "Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." <u>Clark v. Kellogg Co.</u>, 205 F.3d 1079, 1082 (8th Cir. 2000); <u>see</u> Fed. R. Civ. P. 56(c).

Informal administrative agreements such as the Form 870-AD presented here do not conclusively settle tax liability. <u>See</u> <u>Botany Worsted Mills v. United States</u>, 278 U.S. 282, 288 (1929) (holding that an informal agreement of settlement does not constitute a binding agreement); <u>Cain</u>, 255 F.2d at 198 (noting that the statutes specifically authorizing and setting the procedure for the creation of binding agreements, of necessity, make informal settlement agreements nonbinding). However, where the statute of limitations has run on the IRS's ability to alter a taxpayer's liability for the years covered by an informal settlement agreement, the taxpayer may be estopped from seeking a refund of the taxes to which he or she agreed. The various circuit courts differ as to the circumstances under which the taxpayer is estopped. <u>See, e.g.</u>, <u>Whitney v. United States</u>, 826 F.2d 896, 897-98 (9th Cir. 1987) (citing cases from seven circuits presenting "divergent views" on the extent to which Form 870-AD agreements estop taxpayers from later seeking a refund).

-4-

This circuit stated its position on the question in <u>Cain</u>,[3] where it "allow[ed] the statute of limitations, on general legal ground, to put a seal of finality on a tax settlement." 255 F.2d at 198. The court went on:

> [W]e think it is sufficient to preclude a taxpayer from claiming refund, in relation to an executed settlement agreement, that the statute of limitations has run against the right of the Commissioner to deal with the situation further.[4]

<u>Id.</u> at 199. It is undisputed that the Ihnens executed the settlement agreement and that they attempted to claim a refund after the statute of limitations had run against the Commissioner. Under <u>Cain</u>'s clearly enunciated rule, there are no genuine issues of material fact and the government is entitled to summary judgment.

The Ihnens attempt to distinguish <u>Cain</u> on the facts.[5] They assert that the holding in <u>Cain</u> depended on the taxpayer in that case engaging in "tax gamesmanship," and observe that the underlying agreement in that case involved parties not represented in the lawsuit. It is true that <u>Cain</u> considered these matters relevant, but <u>Cain</u> also states that those facts only offer an alternative basis for its decision. 255 F.2d at 199. ("We think that the grounds discussed, separately as well as collectively, required the summary judgment which the trial court entered.").

---

[3]Judge Van Oosterhout wrote a strong dissenting opinion in <u>Cain</u>. 255 F.2d at 199-202.

[4]<u>Cain</u> explicitly differentiates this holding from "conventional equitable estoppel." 255 F.2d at 199.

[5]The Ihnens also argue that <u>Cain</u> should be re-evaluated in light of more recent decisions by other circuits. We however are bound by the <u>Cain</u> opinion. <u>See</u> <u>LePique v. Hove</u>, 217 F.3d 1012, 1014 (8th Cir. 2000).

The Ihnens also note that the taxpayer in Cain made no attempt to preserve a right to reopen the matter.  See id. at 199 ("To have escaped [summary judgment], appellant at the least should have taken some step to repudiate the settlement agreement before the statute of limitations had run.").  The Ihnens argue that Kading's letter to Onken specifically reserved the right to make a subsequent "offer in compromise . . . of whatever the actual tax liability in this matter computes out to be."  However, no such offer was made prior to the running of the statute of limitations.

At oral argument before this court, in a final effort to avoid the holding of Cain, counsel for the Ihnens waived the statute of limitations as a defense to any counterclaim the IRS might have for taxes it did not assess under the 870-AD agreement.[6]  The waiver, however, came too late.  See Renfro v. Swift Eckrich, Inc., 53 F.3d 1460, 1464 (8th Cir. 1995) (stating that, absent exceptional circumstances, this court will not consider issues first raised on appeal).  Moreover, whether the government could act on such a waiver is not at all clear.  We do not rule on whether a waiver, timely made, would serve to defeat the government's estoppel argument.[7]

---

[6]After an initial discussion on the subject of waiver, during which counsel for the Ihnens appeared to waive the statute of limitations defense to a counterclaim by the government, a judge on the panel sought a clarification and asked:  "I'm asking you again: Do you waive the statute of limitations?"  Counsel replied, "Your Honor, we would waive the statute of limitations."

[7]We note that counsel for the government opined, at oral argument before this court, that the limitation on the government to assess taxes once the time for doing so had passed under 26 U.S.C. § 6501, was a failure of power, not merely a limitation that could be waived by the other party.  Cf. Cain, 255 F.2d at 198-99 ("[I]t may collaterally be noted that the limitations against the Commissioner as to making assessments, different than as to statute of limitations in general, have been held to go to the existence of the power and not to the matter of using a remedy.") (citing Beverly Wall Paper v. Commissioner, 98 F.2d 211, 212 (3rd Cir. 1938)).

In their reply brief to this court and again at oral argument, the Ihnens argued that the government effectively imposed the statute of limitations on itself, estopping itself from a counterclaim without ever asserting it. The Ihnens acknowledge that they might have dispelled the government's estoppel defense by waiving the statute of limitations on governmental assessment of taxes for the years covered by the 870-AD agreement, but maintain that they were never in procedural posture to do so. They are incorrect.

The government pleaded the estoppel defense in its answer to the complaint. Furthermore, the government, citing and quoting <u>Cain</u>, made the estoppel argument the sole basis of its motion for summary judgment. Those twin filings were sufficient to put the Ihnens on notice that the expiration of the statute of limitations formed the linchpin of the government's estoppel argument. The Ihnens had opportunity, particularly in their brief in opposition to summary judgment, to waive use of the statute of limitations and offer an argument to the district court that such waiver distinguished their situation from <u>Cain</u>. They did not avail themselves of that opportunity.

Accordingly, we affirm the summary judgment dismissing the refund claims of the Ihnens.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-